Sorenson v. State, 178 Wis. 197.

_____

SORENSON, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 12—October 10, 1922.*

*Criminal law: Plea of guilty: Procedure subsequent: Due process of law: Presumption of sanity: Accused suffering from shell shock: Competency to plead: Opinion of trial judge: Experts.*

1. If a plea of guilty is understandingly entered in a criminal case by a sane adult defendant, no further trial than the proper pronouncement of sentence is required.
2. Where accused enters a plea of guilty there is no issue to be tried, no need for a jury nor for a waiver of a jury trial, either orally or in writing; and a plea of guilty need not be in writing.

3. The reception of a plea of guilty and a lawful sentence thereon violates no guaranty of either state or federal constitution, but, on the other hand, constitutes due process of law.

4. The presumption is that a defendant in a criminal case is sane and mentally competent.

5. Where accused entered pleas of guilty to assault with a dangerous weapon with intent to rob, and of larceny, and one of the reasons assigned for a new trial was that accused at the time of the plea to the information was mentally incompetent to enter a plea of guilty, the statement of the trial judge, of long experience in criminal cases, that the accused was in his court three times, once on the witness stand, and that he noticed nothing unusual to indicate that accused was suffering from any mental disturbance, is entitled to great weight on appeal.

6. Where accused claimed that he was mentally incompetent to enter a plea of guilty, the evidence of physicians that he was suffering from shell shock which seriously affected his nervous system but who did not purport to express any opinion upon his mental soundness, either at the time of the commission of the offense or of the entry of the plea, is not sufficient to overcome opinions of physicians and others that he was sane.

ERROR to review a judgment of the municipal court of Milwaukee county: A. C. BACKUS, Judge. *Affirmed.*

The plaintiff in error, hereinafter called the defendant, was arrested and charged with the offense of an assault, being then and there armed with a dangerous weapon, to wit, a loaded revolver, with intent to rob one Katherine Worden.. He was also charged with the larceny of an automobile of the value of over $1,500 committed on the same day. On March 20, 1920, he was arraigned on the charge of robbing and the information read to him by the district attorney. He pleaded guilty to the charge, and upon motion of his attorney the case was continued until March 25th, when sentence was to be passed. He also pleaded guilty to the charge of larceny of the automobile, and on March 25, 1920, the defendant and his attorney being in court, the defendant was sentenced for both offenses to fifteen years' imprisonment in the state prison. Later a

motion for a new trial was made and denied.   The grounds for the new trial were substantially those now urged for the reversal of the judgment.

*W. A. Hayes* and *C. J. Otjen,* both of Milwaukee, for the plaintiff in error.

For the defendant in error there were briefs by the *Attorney General, Winfred C. Zabel,* district attorney of Milwaukee county, and *George A. Shaughnessy,* assistant district attorney, and oral argument by *Mr. Zabel* and *Mr. Shaughnessy.*

The following opinion was filed June 6, 1922:

VINJE, C. J.   At about 9:30 o'clock on the morning of March 15, 1920, the defendant, an ex-soldier in the late war, twenty-three years of age, left his home and went by street car to a point on the Wells-Farwell line not far from 305 Prospect avenue.   He wore an army raincoat and carried a suitcase.   Upon reaching No. 305 he rang the bell to the apartment.   When the door was opened he walked in and asked the little girl who opened it where her mother was. At this time the maid appeared and the defendant said, "Stand still, put up your hands," and pointed a 45-caliber navy revolver at her.   He then went to the room where Mrs. Worden and her mother were and said, "Give me your jewelry and your money," and pointed the revolver at her. She said she did not have much to give but would go and see.   When she went to her room her mother reached for the telephone and called "police," whereupon the defendant left.   He went down the street a short distance, stole an automobile; and was later captured in Racine.   His revolver was found and was then loaded.   While approaching the house and while in the house he wore a mask that he had prepared the previous Sunday.   He said he chose Prospect avenue because it was quiet there.   When apprehended in Racine he said he had intended to drive the automobile to Chicago and sell it.

That the defendant stole the automobile and attempted robbery, being armed with a dangerous weapon, are verities in the case. True, defendant after entering a plea of guilty testified that at the time he pointed the revolver at the women he "didn't have anything in the barrel." In view of his plea of guilty and other evidence this statement cannot be held to impeach the effect of the plea which admitted the facts alleged in the information.

After the plea was entered the trial court swore several witnesses for the purpose, among others, of securing facts that might aid him in determining the length of the sentence that should be pronounced. At this examination the defendant and his attorney, Mr. Mackut, were present and the defendant testified in his own behalf and was cross-examined. Some facts relevant to his army service were elicited, as were also facts bearing upon the offenses to which he had pleaded guilty. Neither of the attorneys now appearing for the defendant was connected with the case till some time after sentence.

The defendant has assigned as errors:

"(1) That the proceedings in the municipal court on the 25th day of March, 1920, and on preceding days did not constitute a trial as provided by law; (2) that, by said proceedings, the defendant was denied the protection guaranteed to him by art. I, sec. 5, of the constitution of this state; (3) that, by said proceedings, the defendant was denied the protection guaranteed him by art. I, sec. 7, of the constitution of this state; (4) that, by said proceedings, the defendant was denied the protection guaranteed to him by art. I, sec. 8, of the constitution of this state; (5) that, by said proceedings, the defendant was denied the protection guaranteed to him by the Fifth amendment and by sec. 1, Fourteenth amendment, constitution of the United States; (6) that the court erred in receiving and acting upon the defendant's alleged plea of guilty; (7) that the court erred in failing to require a plea of guilty in writing; (8) that the court erred in failing to require a waiver of trial by jury in writing; (9) that the court erred in fail-

ing to advise the defendant of his rights; (10) that the court erred in receiving a plea of guilty not warranted by the facts; (11) that the court erred in overruling defendant's motion for a new trial; (12) that the judgment is opposed to the evidence; (13) that the judgment is opposed to the law; (14) that the punishment imposed is excessive and unwarrantably harsh; (15) that justice has not been done."

We shall not attempt to treat these assignments separately. In a criminal case if a plea of guilty is understandingly entered by a sane adult defendant no further trial than the proper pronouncement of a sentence is required. There is no issue to be tried, no need for a jury, nor for the waiver of a jury trial either orally or in writing, nor need the plea of guilty be in writing. The reception of such a plea and a lawful sentence thereon violates no guaranty of either our own or the federal constitution, but on the other hand constitutes due process of law. We deem it unnecessary to cite authorities to sustain the above elementary principles of criminal law.

The only serious judicial inquiry presented by the record is whether or not the defendant was at the time of the commission of the offenses and at the time of pleading to the information criminally responsible and mentally competent to enter the plea of guilty. The presumption is that a defendant is sane and mentally competent. *Zingler v. State,* 146 Wis. 531, 131 N. W. 837. In addition to this presumption we have this statement of the trial court:

"This case was pending in this court after arraignment on a charge of larceny until sentence for a period of nine days, and on the charge of assault for a period of five days, and although he was represented by counsel no special plea was interposed either as a defense or in mitigation of sentence. . . . The defendant was in court three times and had taken the witness stand on the 25th of March; the court had an opportunity to see him and to note his actions and noticed nothing unusual from which the court could say that he was suffering from any mental disturbance."

Judge BACKUS has had a long experience as judge of a court that hears nothing but criminal cases and is kept busy all the time.    He has besides, by his interest in a rational treatment of criminals, earned a reputation for fairness and insight that is enviable.    Therefore a statement like the one quoted coming from him is justly entitled to great weight. In addition to the above statement we have the testimony of Dr. Rupp, who has charge of the mental defectives of the juvenile court, and who talked with the defendant in the district court and observed him for a short time, to the effect that in his opinion the defendant was sane and mentally competent to take care of his rights.    The affidavit of Dr. Smith, the prison physician at Waupun who examined the defendant at the request of the warden, states that he finds the defendant suffering from no mental derangement, illusions, or hallucinations; that he understands right from wrong, and in the opinion of the affiant is capable of understanding the consequences of his acts.    The affidavit of Henry Town, the warden of the state prison, states that he

"has had considerable experience in observing persons sentenced to the Wisconsin state prison for crime as to their mental conditions; that the above named defendant was received at the Wisconsin state prison on the 26th day of March, 1920, at which time and since which time this affiant has had an opportunity of observing and watching the said *Frank Sorenson;* that from the time that he was first received at said prison up to the present time said *Frank Sorenson* had never exhibited any evidence of insanity or mental derangement whatever, but at all times and does still appear bright and far above the average prisoner in intelligence; that during all of his confinement at said place he has made a good prison record; that this affiant has observed said *Frank Sorenson* at times when said *Frank Sorenson* knew he was being observed and also on many occasions when said *Frank Sorenson* was unaware that he was being observed; that all this affiant has been able to observe in the mental condition of said *Frank Sorenson* was that he is very nervous and easily excitable; that in the opinion of this affiant said *Frank Sorenson* is neither in-

sane nor in any manner mentally deranged nor in need of mental treatment, and that he fully understands the nature of his act and has no difficulty in determining right from wrong."

It is a fact that defendant served in the army in France for eighteen months; that he was gassed at Soissons and was wounded at Verdun; that he spent from October, 1918, to Easter Sunday of 1919 in hospitals in France, and had been treated by physicians in this country from April, 1919, to September 10, 1919, when he was discharged from the United States hospital. His record as a soldier was splendid and he was severely wounded. These facts as to service, wounds, gassing, and treatment were before the trial court before sentence was passed.

In opposition to the testimony and affidavits on the part of the state the defendant presents the affidavit of Dr. Evans, who had a large experience in the late war, stating that he has found as a result of shell shock and other nervous and mental disturbances originating in battle, actual changes in the central nervous system produced by continuous proximity to shock and concussion caused by heavy artillery, in some cases actually causing more or less permanent derangement of the central nervous system. The affidavit of Dr. Becker is to the effect that from sources stated "there are factors in connection with the defendant's early life history, his difficulty in engaging and adjusting to his life problems adequately, coupled with the strain, stress, and shock of war, his experiences in the war, and the injuries received in battle, and particularly the shell shock and injuries to his spine, that have a material and large bearing upon the question of his responsibility for his conduct at the time of the commission of the acts charged against him herein." The affidavit of Dr. Seaman emphasizes the serious results to the nervous system that may follow shell shock and battle conditions; that in his opinion, because of the heavy artillery battles in which the defendant was engaged, his wounds, and his naturally sensi-

tive nervous system, the latter became seriously deranged, and that the extent and permanency of such derangement cannot be determined without a careful study of the case. The affidavits of Drs. Evans and Becker state that defendant's war history is an important factor in determining his mental condition. The affidavits contained in the reply brief of defendant do not shed any light upon the real inquiry in the case. The defendant himself in an affidavit claims he has no clear recollection of the commission of the crime or of what took place in court, though on March 25th he testified in detail as to how the crime was committed.

In view of the statements and action of the trial court who saw the defendant, and of the affidavits of Dr. Rupp, Dr. Smith, and Warden Town, who each observed and talked with him and who unequivocally state that in their opinion he is mentally competent to understand the nature of his offense and the effect of his plea of guilty, and in view of the fact that the affidavits of the doctors in behalf of the defendant do not purport to express any opinion upon his mental soundness either at the time of the commission of the offense or of the entry of the plea, but merely allege that shell shock and war conditions may and do seriously affect the nervous system, a fact now quite well known to the layman as well as to the expert, and that such fact should be taken into consideration in passing upon the mental state of the defendant, we are convinced that we cannot disturb the judgment of the trial court. It is true that Dr. Seaman states that in his opinion the nervous system of the defendant was seriously disturbed by his war experience, but that falls far short of showing lack of mental capacity to understand the nature of the offense or the effect of the entry of the plea of guilty.

*By the Court.*—Judgment affirmed.

A motion for a rehearing was denied, without costs, on October 10, 1922.