STATE, Plaintiff-Respondent, v. SCHILL, Defendant-Appellant.†

Supreme Court

*No. 77–474–CR. Argued December 5, 1979.—*
*Decided January 8, 1980.*
(Also reported in 286 N.W.2d 836.)

† Motion for reconsideration denied, without costs, on February 13, 1980.

364

For the appellant there were briefs by *William B. Guis, Thomas W. St. John, Robert H. Friebert* and *Friebert & Finerty,* all of Milwaukee, and oral argument by Mr. Guis.

For the respondent there was a brief by *Bronson C. La Follette,* attorney general, and *Melvin K. Washington,* assistant attorney general, and oral argument by *William L. Gansner,* assistant attorney general.

COFFEY, J.   Clifford Schill (hereinafter the defendant) appeals from orders of the circuit court for Dane county denying his postconviction motions.

The defendant was charged with two counts of intentionally filing false and fraudulent Wisconsin income tax returns for the calendar years 1969 and 1970. It was alleged that a "net-worth" investigation established an underreported personal tax liability of $12,000 for 1969 and $40,000 for 1970, contrary to sec. 71.11(42), Stats.[1]

The case was set for a trial by jury on January 14, 1974 but some 3 days before trial the defendant's attorney advised the court that the defendant and the state had entered into a plea bargain agreement. Pursuant to the agreement, the defendant was to enter a plea of no contest to count number two of the information charging him with filing a false and fraudulent tax return for 1970 and the state would then move to dismiss the first count pertaining to the filing of a false and fraudulent tax return for 1969. The state also agreed to recommend to the court, and to allow the defense attorney to independently recommend, an appropriate fine, and the attorney general further agreed not to recommend imprisonment or probation. In addition, the state agreed not to commence any criminal actions against the defendant for underreporting his taxes for the years prior to 1970. Lastly, the state agreed not to commence any actions for revocation of the defendant's restaurant and catering corporations' liquor licenses, pursuant to sec. 176.121, Stats.[2]

---

[1] "Sec. 71.11 Administrative provisions; penalties. (1) . . .

"(42) SAME; FALSE INCOME TAX RETURNS; FRAUD; FELONY. A person, other than a corporation, who renders a false or fraudulent income tax return with intent to defeat or evade any assessment required by this chapter shall be guilty of a felony and may be fined not to exceed $10,000 or be imprisoned not to exceed 5 years or both, together with the cost of prosecution."

[2] "176.121 Revocation on complaint of the department of revenue. (1) Upon complaint filed by a duly authorized employe of the department of revenue with the clerk of any court of record in the jurisdiction in which premises of the licensed person complained of are situated, that any such licensed person has at any

Prior to accepting the plea agreement the court asked the defendant if he understood the offense with which he was charged and the possible penalty involved. The defendant stated that he wished to enter a no contest plea to the filing of a false and fraudulent tax return for the year 1970 with a full understanding of the offense with which he was charged and the maximum penalties. Moreover, the defendant stated that he understood that

time violated this chapter, or keeps or maintains a disorderly or riotous, indecent or improper house, or that the licensed person has at any time sold or given away any intoxicating liquor to any minor, or to persons intoxicated or bordering on intoxication, or to known habitual drunkards, or has failed to maintain said premises in accordance with the standards of sanitation prescribed by the department of health and social services, or in whose licensed premises known criminals or prostitutes are permitted to loiter, or that the licensed person has at any time violated any federal or state law or been convicted of any felony or any offense against the laws relating to the sale of intoxicating liquors or fermented malt beverages, or that the licensed person does not possess the qualifications required by this chapter for licensure, the clerk of said court shall issue a summons commanding the person so complained of to appear before it not less than 20 days from its date, and show cause why the license should not be revoked or suspended. Such summons and a copy of the complaint shall be served at least 20 days before the time in which such person is commanded to appear, and may be served either personally or upon the person in charge of the place to which such license relates.

"(2) . . .

"(3) . . .

[The statute does not contain a sub. 4]

"(5) Whenever any local licensing body or any court shall revoke or suspend a license or impose any penalty upon any licensee for the violation of any provision of this chapter or of s. 66.054, the clerk of the local licensing body or the clerk of the court revoking or suspending such license or imposing such penalty shall within 10 days after such revocation, suspension or imposition of such penalty, mail a report to the department of revenue at Madison, Wisconsin, giving the name of the licensee, the address of the licensed premises, and a full detail of the penalty imposed."

a plea of no contest was substantially equivalent to a plea of guilty and that he was entering the plea of no contest freely and voluntarily after consulting with his attorney. Lastly, the defendant told the court that he understood he was giving up certain procedural and constitutional rights by entering his plea of no contest.

Based upon the plea bargain the court accepted the defendant's plea of no contest and found the defendant guilty of count number two of the information, rendering a false and fraudulent income tax return for the calendar year 1970, in violation of sec. 71.11 (42), Stats. The court also found the plea was entered knowingly and voluntarily.

The court then inquired into the underlying facts of the case for purposes of determining an appropriate penalty. The state reported that, as a result of a net worth investigation conducted by the Department of Revenue, the defendant was found to have had a net taxable income of $63,000 for the calendar year of 1970, but only reported a $23,000 net taxable income. The defendant's attorney, while conceding that the defendant had filed a fraudulent return, disputed the dollar amount of unreported income. The attorney stated that a substantial portion of the unreported income was due to a conflict between the defendant's CPA and the tax department's counsel in the tax reporting benefits attributed to certain improvements to one of the defendant's corporations. The defendant offered to bring his accountant into court to substantiate his position.

The court, upon hearing the dispute concerning the amount of unreported income, suggested that perhaps it would be better to set aside the no contest plea and have a trial to determine the amount of income the defendant failed to report. Although the court acknowledged that the precise amount of unreported income was not an element of the offense, nevertheless, the court felt that it

was a significant factor to be considered by the court when imposing a sentence. After a discussion between the prosecutor, the defense attorney and the court, with the defendant present, it was agreed that the court would accept the defendant's no contest plea to the charge of filing a fraudulent 1970 tax return but withhold imposing sentence until an adjourned date when the respective accountants would testify as to their calculated amounts of unreported income.

On March 5, 1974, the adjourned date of the hearing, the parties informed the trial court that they had reached a compromise on the question of the amount of unreported income, and the state agreed to reduce the net taxable income from $64,000 to $43,000. At this time the court ordered the information amended to conform with the new plea agreement as to the amount of net taxable income ($43,000). After agreeing to the amendment, the defendant confirmed his plea of no contest to the amended charge. The court then reaffirmed its acceptance of the new plea bargain and found the defendant guilty of one count of filing a false and fraudulent income tax return for the 1970 calendar year and dismissed the 1969 fraudulent income tax count.

Following the acceptance of the plea bargain the defendant requested that the defendant's accountant be permitted to testify only for the purpose of mitigation of the penalty. The accountant testified that the bulk of the alleged unreported income resulted from a conflict between the defendant's CPA and the tax department's accountant in calculating the cost of certain remodeling done on the defendant's Oak Creek property. The state disagreed with the defendant's accountant's testimony that the actual cost to the defendant of remodeling the property was $17,000 more than the amount previously reported on the 1970 tax return. The state relied on a net worth investigation conducted by the Department of

Revenue that found a discrepancy in the defendant's net taxable income to support its conclusion that the defendant underreported his income. After hearing the defendant's accountant's testimony, the court found that the defendant Schill's conduct was not as purposely fraudulent as many cases that have come before the court where there were obvious means used to conceal the assets, but nevertheless the court concluded that it was a "fairly serious offense and if everybody did it, the whole tax system would break down." The court fined the defendant the sum of $4,000 plus costs in the amount of $3,000.

On April 7, 1977, more than 3 years after his conviction, the defendant filed alternative motions for post-conviction relief seeking:

1. vacation of the judgment of conviction and dismissal of the charges;

2. leave to withdraw the plea of no contest and for a trial;

3. a writ of error *coram nobis;*

4. a writ of habeas corpus; or

5. other appropriate relief pursuant to art. I, sec. 9[3] of the Wisconsin Constitution.

Alternatively, the defendant sought a judicial recommendation for a gubernatorial pardon with respect to the judgment of conviction. As grounds for the motion the defendant alleged that: (1) the plea was defective because the trial court failed to establish a factual basis for the charge; (2) the state subsequently determined that the actual amount of unreported income was $2,330

---

[3] "Remedy for wrongs. SECTION 9. Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

and not $20,000, and (3) the state failed to comply with the plea bargain by interfering with the defendant's ability to renew liquor licenses for his corporations.

The trial court denied the defendant's motion for post-conviction relief on both grounds, first, that the motion was not timely filed and thus the court was without jurisdiction to consider the same, and secondly, if the court should find it had jurisdiction, that the record clearly established that the plea was voluntarily and knowingly made and there was an adequate factual basis to support the no contest plea. The court also concluded that the defendant was entitled to the benefit of the plea bargain concerning nonrevocation of his liquor licenses and further he enjoined the Department of Justice from violating the express condition of the plea agreement with the defendant.

Following the denial of his postconviction motions, the defendant filed a motion seeking "a contempt citation against the State of Wisconsin for its failure to abide by the injunction entered by the Court on June 23, 1977, the State having violated said injunction by failing to honor provisions of the plea bargain." In the alternative, the defendant seeks vacation of the judgment and leave to withdraw the plea of no contest. Specifically, the defendant contends that the state has violated the plea bargain by requiring the defendant to relinquish his positions as officer and director in several closely held corporations in order for the corporations to have an agent eligible to secure renewals of liquor licenses.[4]

After the hearing, the court issued an order denying the defendant's motion for contempt and the alternative

---

[4] The state is prohibited, pursuant to sec. 176.05 (9), Stats., from issuing a liquor license to any person who has been convicted of an offense against the laws of the state punishable by imprisonment in the state prison. This provision also applies to all officers and directors of any corporation applying for a liquor license.

motion for vacation of the judgment and leave to withdraw the no contest plea. The court ruled that it was ". . . without jurisdiction to vacate the judgment of conviction and allow withdrawal of the plea of no contest or, if the Court has jurisdiction, the Court declines to exercise it in that fashion." The court also concluded that there was "no violation of the literal language of the plea agreement." It is from this order denying a contempt citation and the earlier order denying the motion for postconviction relief that the defendant has appealed.

*Issues:*

1. Did the trial court have jurisdiction, some 3 years after sentencing and fulfillment of the plea agreement, to entertain a motion for withdrawal of the no contest plea and vacation of the judgment of conviction?

2. Were the defendant's no contest plea and his subsequent conviction invalid and subject to collateral attack on one or more of the following grounds:

a. that the trial court failed to establish the defendant's understanding of the charge or the existence of a factual basis for the plea;

b. that an essential element of the crime was not proven;

c. that the plea bargain agreement constituted a misunderstanding prejudicial to the defendant;

d. that the defendant received ineffective assistance of counsel at the time his plea was entered; or

e. that after the entry of the plea, the state concluded that the defendant was innocent?

3. Did the trial court err in denying the defendant an evidentiary hearing on the issues raised by his motions?

On appeal, the defendant contends that contrary to the trial court's ruling, the trial court had jurisdiction to entertain the defendant's postconviction motions for relief on the basis of any of the following:

1.  sec. 974.06, Stats.;
2.  a writ of *habeas corpus;*
3.  a writ of error *coram nobis;*
4.  the inherent power of the court to grant withdrawal of a plea and a trial; and
5.  any other means the court deems proper.

Thus, the defendant claims the trial court erred in refusing to grant relief from his no contest plea.

The defendant argues that the trial court had jurisdiction to reverse his conviction and grant withdrawal of the no contest plea, pursuant to sec. 974.06, Stats., or by a writ of *habeas corpus.* However, it is clear that neither remedy is available to the defendant in this case because a primary requirement of both remedies is that the person seeking relief under those provisions *must be in custody.* Sec. 974.06(1), reads as follows:

"**Post-Conviction procedure.** (1) After the time for appeal or post-conviction remedy provided in s. 974.02 has expired, a *prisoner in custody under sentence of a court* claiming the right to be released upon the ground that the sentence was imposed in violation of the U. S. constitution or the constitution or laws of this state, that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." (Emphasis supplied.)

In *State v. Theoharopoulos,* 72 Wis.2d 327, 240 N.W.2d 635 (1976) this court held that for purposes of post-conviction review, pursuant to sec. 974.06, Stats., "The result we reach here is admittedly pursuant to a rigid jurisdictional requirement, but it is one imposed upon the courts by the legislature. For jurisdiction, the prisoner must be in custody under the sentence of a state court." *Id.* at 334. This holding was recently reaffirmed

in *Thiesen v. State,* 86 Wis.2d 562, 273 N.W.2d 314 (1979). Furthermore, the motion pursuant to sec. 974.06, was "authorized an intended to be a substantial replacement for the petition for *habeas corpus* in this court. *Peterson v. State* (1972), 54 Wis.2d 370, 195 N.W.2d 837." *Zuehl v. State,* 69 Wis.2d 355, 358, 230 N.W.2d 673 (1975). However, that statute has not substantially replaced the writ of *habeas corpus* because sec. 292.01(1)[5] allows a "person restrained of his liberty" to prosecute a writ of *habeas corpus* to obtain relief from confinement *subject to the* provisions of sec. 974.06. Thus, it is clear that the remedies provided in sec. 974.06, and the writ of *habeas corpus* are limited solely to those persons confined under sentence of a state court. In this case the defendant at no time was confined as a result of his conviction on the present charge, therefore, the relief provided by either sec. 974.06 or *habeas corpus* is clearly inappropriate. Thus, we hold the trial court was without subject matter jurisdiction to grant the relief requested by the defendant.

Next the defendant contends the trial court had jurisdiction to grant the defendant's motion by virtue of a writ of error *coram nobis. Mikulovsky v. State,* 54 Wis.2d 699, 196 N.W.2d 748 (1972), this court held that:

"In order to grant a writ of error *coram nobis* there must be shown the existence of an error of fact which was unknown at the time of trial and which is of such a nature that knowledge of its existence at the time of trial would have prevented the entry of judgment. *State v. Randolph* (1966), 30 Wis.2d 1, 144 N.W.2d 441; *State v. Kanieski* (1966), 30 Wis.2d 573, 141 N.W.2d 196; *Houston v. State* (1959), 7 Wis.2d 348, 96 N.W.2d 343.

[5] "292.01 Habeas corpus, who to have; definitions. (1) Every person restrained of his liberty may prosecute a writ of habeas corpus to obtain relief from such restraint subject to ss. 292.02 and 974.06."

In *Houston v. State, supra,* page 350, this court thoroughly delineated the scope of the writ:

" 'The writ of *coram nobis* is a discretionary writ addressed to the trial court. Its principal aim *is* to afford the trial court an opportunity to correct its own record of an error of fact not appearing on the record, and which alleged error would not have been committed by the court had the matter been brought to the attention of the trial court. 2 R.C.L., p. 305, sec. 259. *In re Ernst* (1923), 179 Wis. 646, 192 N.W. 65, 30 A.L.R. 681. Where an error or question of fact appears on the record such question under our practice may be raised by writ of error. Where there is a remedy afforded by a writ of error or by appeal the writ of *coram nobis* will not lie. Likewise where the writ of *habeas corpus* affords a proper and complete remedy the writ of *coram nobis* will not be granted. *State v. Turpin* (1949), 255 Wis. 358, 38 N.W. (2d) 495. On an application for a writ of *coram nobis* the merits of the original controversy are not in issue and such a writ cannot be used for the purpose of obtaining a new trial on the grounds of newly discovered evidence relating to matters litigated at the trial. *In re Ernst* (1923), 179 Wis. 646, 192 N.W. 65.' " *Id.* at 721.

The defendant argues that there were two errors of fact in this case which require issuance of a writ of error *coram nobis.* The first error claimed was the fact that "the state's entire case against the defendant was subsequently determined, by the state itself, to be unfounded." Specifically, the defendant contended that the state, in a civil action brought by the Department of Revenue subsequent to his conviction for violation of sec. 71.11(42), Stats., concluded that the defendant underreported his net income by less than the $20,000 in the charge to which he pled no contest. However, the amount of unreported income was not an element of the crime and in fact the court so recited in the following language:

"Admittedly, under the law you can get the same penalty for five dollars as you can for a hundred thousand."

and thus there was no error of fact in this case that required granting the writ of error *coram nobis*.

The second error of fact claimed by the defendant "relates to the plea agreement pursuant to which his conviction was obtained." The defendant contends that subsequent events establish that the plea agreement was impossible of fulfillment and if the defendant or the trial court had been aware of this, the judgment of conviction would not have been entered. The defendant further contended that the state promised not to take any action with respect to the liquor licenses held by the corporations as a result of the defendant's conviction. However, the record demonstrates that the state only agreed "not to seek revocation of any liquor licenses held by the defendant's corporations *pursuant* to sec. 176.121, which says conviction for any crime is grounds for revocation of liquor licenses." Also, the assistant attorney general, in a letter sent to the defendant's attorney on January 11, 1974, stated that:

". . . the plea bargain between the State and yourself as attorney for the defendant contains the agreement that the State will not pursue the revocation of the defendant's liquor licenses, based upon his plea to the tax felony case. Pursuant to this agreement, we will not in any way, pursuant to sec. 176.90 [renumbered 945.041] or 176.121, take any action against the defendant's or defendant corporation's liquor licenses due to the fact that the defendant has entered the plea to a violation of sec. 71.11 (42) of the Wisconsin Statutes."

In this case the state has adhered to the plea agreement as stated in the trial court record and as explained thoroughly to and accepted by the defendant at two court hearings. The subsequent refusal to renew the defendant corporations' liquor licenses was based on sec. 176.05 (9), Stats., which provides as follows:

"(9) WHERE AND TO WHOM LICENSES NOT GRANTED. No license or permit shall be granted to any person or persons under the age of 18 years for the sale of any such intoxicating liquors, or to any person who is not of good moral character and a full citizen of the United States and of this state and who has not resided in this state continuously for at least one year prior to the date of filing the application; nor, subject to s. 111.32(5)(a) and (h), shall any such license be granted or issued to any person who has habitually been a petty law offender, or has been convicted of an offense against the laws of this state punishable by imprisonment in the Wisconsin state prisons, unless the person so committed has been duly pardoned. This subsection shall not apply to a Wisconsin corporation; it applies, however, to all officers and directors of any such corporation."

The state has not promised nor was in any position to promise, that a defendant's liquor licenses would be renewed by a separate and distinct governmental unit, a municipality, town or village, at a future date in violation of sec. 176.05(9), Stats. Thus the plea agreement was not "repudiated or dishonored" by the state and, therefore, there was no proof of an error of fact allowing the use of a writ of error *coram nobis*. *Mikulovsky v. State, supra*. We hold that the trial court did not have jurisdiction to issue such a writ.

The defendant cites *Santobello v. New York*, 404 U.S. 257 (1971) as authority for allowing the defendant to withdraw his plea. In *Santobello* ". . . the state had agreed to make no recommendation regarding sentence in exchange for the defendant's plea of guilty. The plea agreement was not on the record and a different prosecutor inadvertently violated the agreement by recommending a one-year sentence."

However, in this case, the trial court found:

". . . the circumstances of this case dictate that the appropriate relief upon proof of this breach of the agreement is strict enforcement of the plea agreement rather

than allowing the defendant to withdraw the plea. The promises of the state regarding sentence recommendation were fulfilled."

We hold that the state has not violated the intent or language of the plea agreement entered into and approved in the trial court on January 11, 1974 ". . . not to seek revocation of any of the liquor licenses held by the defendant's corporations pursuant to sec. 176.121, which says conviction for any crime is grounds for revocation of liquor licenses."

Lastly, the defendant contends the court had jurisdiction to grant his postconviction motions requesting vacation of the conviction and leave to withdraw his plea of no contest, pursuant to its inherent power to withdraw a plea, pursuant to art. I, sec. 9 of the Wisconsin Constitution.

In *Pulaski v. State,* 23 Wis.2d 138, 142, 126 N.W.2d 625 (1964) this court recognized that a trial court "has the inherent power to hear" a motion to withdraw a guilty plea and for a new trial where the motion is directed to the court's discretion in the interest of justice. *See also: Dudrey v. State,* 74 Wis.2d 480, 247 N.W.2d 105 (1976). However, this court held that the motion should be served and filed within one year from the finding of guilt except in an exceptional case:

"There may be an exceptional case or two but normally for a trial court to entertain a *motion made beyond a year would seem to be an abuse of discretion.*" (Emphasis supplied.) *Id.* at 144.

Subsequent to *Pulaski v. State, supra,* in Laws of 1969, ch. 255, §63 the legislature enacted sec. 971.08, Stats.[6]

---

[6] "971.08 **Pleas of guilty and no contest; withdrawal thereof.** (1) Before the court accepts a plea of guilty or no contest, it shall:

Sub. (2) reduced the time limit established in *Pulaski* from 1 year to 120 days. This time limit is not, however, a jurisdictional time limit but rather "a rule of administration and regulatory only." *State v. Lee*, 88 Wis.2d 239, 246, 276 N.W.2d 268 (1979). Thus, a defendant may seek to withdraw a plea after the 120 regulatory time period has lapsed but such motion is addressed to the sound discretion of the trial court and we will not upset the court's ruling unless there is a sufficient showing of abuse of discretion. In *Larry v. Commercial Union Ins. Co.*, 88 Wis.2d 728, 277 N.W.2d 821 (1979) this court held that ". . . a trial court's decision to grant a new trial will not be disturbed on appeal in the absence of a clear showing of abuse of discretion." *Id.* at 733. We hold after a review of the record that there was no abuse of discretion in this case.

In this case the defendant sought to withdraw his plea of no contest more than 3 years after the plea and judgment of conviction were entered. Thus, it would have been an abuse of discretion for the trial court to consider the defendant's request unless the defendant demonstrates exceptional circumstances compelling the court to exercise its "inherent power."

In *State v. Lee, supra,* this court held that the defendant has the burden of showing the necessary exceptional circumstances by clear and convincing evidence:

". . . a defendant who seeks to withdraw a plea after the regulatory time period would indeed have to show by

"(a) Address the defendant personally and determine that the plea is made voluntarily with understanding of the nature of the charge and the potential punishment if convicted; and

"(b) Make such inquiry as satisfies it that the defendant in fact committed the crime charged.

"(2) The court shall not permit the withdrawal of a plea of guilty or no contest later than 120 days after conviction.

"(3) Any plea of guilty which is not accepted by the court or which is subsequently permitted to be withdrawn shall not be used against the defendant in a subsequent action."

clear and convincing evidence that exceptional circumstances warranted the invocation of the court's inherent power." *Id.* at 246.

The defendant's contention that there were 5 grounds that constituted exceptional circumstances and require vacation of the plea agreement must be rejected for the following reasons:

1. The defendant's first claim is that the trial court failed to establish that the defendant understood the charges or that there was a factual basis for the charge. Sec. 971.08(1), Stats., provides that a court, before accepting a plea of no contest, must determine that the defendant understands the nature of the charge, the potential maximum punishment, that the plea is voluntarily made and the defendant waives certain constitutional rights. In *Lee v. State, supra,* this court specifically set forth the standard of conduct required of a trial court before accepting a guilty plea:

"It is both statutorily (sec. 971.08(1), Stats.) and constitutionally required that the record show that the trial court, before accepting a plea of guilty, personally questioned the defendant to make sure that the plea was voluntary and that there was an understanding of the nature of the crime and of the potential punishment, and, in addition, there must have been a personal inquiry which was reasonably sufficient to satisfy the court that the defendant in fact committed the crime charged." *Id.* at 248.

The court in this case did explain to the defendant the charge and also outlined the potential punishment. On two occasions the defendant answered the court's inquiries and stated that he understood the charge and the maximum penalty and that his plea was being made freely and voluntarily. At no time did the defendant question or express a lack of understanding of the charges or the implications of a no contest plea. The

defendant was an experienced businessman, the owner of 3 restaurants and a catering service, and thus able to understand the legal advice given him, the court's inquiries and had the benefit of consulting with his attorney prior to and during the 6-week adjourned no contest plea hearings. Also, the defendant and his attorney, when entering the plea on behalf of the defendant, conceded that "there was a fraudulent return" and thus admitted the intent to defraud necessary for conviction. Therefore, we conclude there was sufficient evidence to establish (a) that the defendant understood the charges against him and (b) the existence of a factual basis, *i.e.*, fraudulent intent, for the charges.

2. Secondly, it is claimed that the defendant denied an essential element of the charge, *i.e.*, that of fraudulent intent. At the time of the court's inquiry into the plea bargain arrangement the defendant's counsel on behalf of and in the presence of the defendant, conceded that a fraudulent return was filed. We hold that this is an admission on the part of the defendant with the consent of his counsel, that the defendant possessed the required fraudulent intent necessary for conviction and that any subsequent statements of "any underreporting of income was merely a mistake" and was only intended to mitigate the possible fine levied by showing that the defendant did not engage in as complicated a scheme to conceal money as others have done. But it should be pointed out that at the hearing the prosecutor advised the court in the following language:

". . . we believe that there is an extremely large amount of money involved here; No. 2, that the year he is pleading guilty to was really a part of a pattern of a continued number of years where he was filing false income taxes; . . ."

Therefore, beyond a reasonable doubt there was sufficient evidence to support the defendant's conviction.

3. The defendant's third claim was that he had ineffective counsel. This court in *State v. Harper,* 57 Wis.2d 543, 557, 205 N.W.2d 1 (1973) adopted the ABA standards for effective representation and requires that the representation given to a defendant be equal to that which an ordinarily prudent lawyer, skilled and versed in criminal law, would provide to clients who have privately retained his services. The record in this case clearly establishes that the representation received by the defendant meets this higher standard of competency. *See also: Weatherall v. State,* 73 Wis.2d 22, 26–27, 242 N.W.2d 220 (1976); *Krebs v. State,* 64 Wis.2d 407, 412, 219 N.W.2d 355 (1974); and *Leroux v. State,* 58 Wis.2d 671, 694–95, 207 N.W.2d 589 (1973). The defense counsel, through plea bargaining, was able to have the state agree not to press charges for the previous years the state claimed he had participated in the filing of false and fraudulent tax returns as well as having count number one of the information dismissed. Further, as a result of his attorney's efforts, the defendant only had to pay a fine of $4,000, plus court costs, rather than the $10,000 maximum fine allowed, and saved his client from a potential 5 year prison sentence. The trial court in its findings stated that the attorney was a highly respected criminal tax lawyer in this state and may have made a mistake in strategy, but his defense of the case fell far short of inadequate representation. We believe that the defendant received more than adequate representation in this case.

4. The fourth claim is that there was a misunderstanding between the state and the defendant concerning the plea agreement. As stated earlier, the record establishes in this case that the state only promised not to seek a revocation of the defendant corporations' liquor licenses pursuant to either sec. 176.121 or sec. 176.90 [renumbered sec. 945.041]. The state had not promised,

nor was in any position to promise, that a defendant's liquor licenses would be renewed by a separate and distinct governmental unit, a municipality, town or village, at a future date. The defendant has received the full benefit of the plea bargain in this case. The record reveals no evidence substantiating the defendant's claim that there was a misunderstanding concerning the plea bargain; in fact the record demonstrates after thorough questioning on the part of the court at two separate court hearings that the defendant evidenced and stated that he had a thorough knowledge of the plea bargain.[7] Moreover, the defendant was not prejudiced in this case because the corporations were allowed to continue in business with their liquor licenses even though the defendant was required to relinquish his positions as a director and officer of the firms as a result of his felony conviction.

---

[7] Evidence of the court's questioning of the defendant about the plea bargain can be seen in the following excerpt from the record:

"*The Court:* . . . Now, of course, as quid pro quo you are getting one dismissed and getting certain other concessions, which will bind the attorney general not to proceed on any of the other years; and what were some of the others?

"*Mr. Peshek:* Your Honor, not to seek revocation of any of the liquor licenses held by the defendant's corporations pursuant to sec. 176.121, which says conviction for any crime is grounds for revocation of liquor licenses.

"*The Court:* . . . Based on all that, is it your wish, Mr. Schill, to plead no contest?

"*The Defendant:* Yes.

"*The Court:* You understand that under the law a plea of no contest can be accepted by the Court, but it's the same thing legally as a plea of guilty as far as the criminal nature is concerned. Do you understand that?

"*The Defendant:* Yes.

"*The Court:* That's your desire?

"*The Defendant:* Yes.

". . .

"*The Court:* You are doing this of your own free will after consultation with your lawyer?

"*The Defendant:* Yes."

The defendant was able to continue his control and influence over the corporations as the principal stockholder.

5. Lastly, the defendant claims that the state subsequently determined in a civil action for payment of back taxes that the defendant was innocent of the charge. However, the subsequent civil action only determined the amount of the relinquent taxes owed; it did not consider the question of the defendant's criminal liability. The defendant had an opportunity to litigate the question of criminal liability at trial but chose the benefits of a plea bargain. The plea bargain entered into by the defendant was primarily beneficial to him and we conclude that there was no manifest injustice to the defendant requiring withdrawal of the plea. In *State v. Lee, supra,* this court held that the defendant must establish that withdrawal of a plea is necessary to correct a manifest injustice:

"When a motion to withdraw a plea is made after sentencing, the defendant has the burden of showing by clear and convincing evidence that the withdrawal of the plea is necessary to correct a manifest injustice. *State v. Besso,* 72 Wis.2d 335, 344, 240 N.W.2d 895 (1976); *State v. Reppin, supra* at 384." *Id.* at 248.

We hold the court record fails to disclose any evidence of manifest injustice requiring the court to permit withdrawal of the no contest plea. Since there existed no manifest injustice nor exceptional circumstances that required the trial court to exercise its inherent power to allow the defendant to withdraw his plea of no contest, we hold it would have been an abuse of the trial court's discretion to grant the defendant's request for trial made more than 3 years after the date of sentencing.

Art. I, sec. 9 of the Wisconsin Constitution provides that "every person is entitled to a remedy in the laws for

all injuries, or wrongs which he may receive," but we have found no wrong or injury inflicted upon the defendant that requires or is without a remedy in this case. Therefore, we hold that the defendant is not entitled to fashion a remedy pursuant to art. I, sec. 9 of the Wisconsin Constitution. The defendant had his day in court when he negotiated and renegotiated a plea bargain primarily beneficial to his interests.

In view of the above considerations, we hold that the trial court was without jurisdiction to grant the defendant's postconviction relief pursuant to either sec. 974.06, Stats., a writ of *habeas corpus*, art. I, sec. 9, Wisconsin Constitution, a writ of error *coram nobis* or its inherent power (sec. 971.08(2) and *Pulaski v. State*, *supra*).

Finally, the defendant contends that the trial court erred in denying his motions without an evidentiary hearing. However, we hold that the testimony, motions, files and records demonstrate that the trial court was without jurisdiction to grant relief in this case and thus the defendant was *not* entitled to an evidentiary hearing.

*By the Court.*—Orders affirmed.

The following memorandum was filed February, 22, 1980.

PER CURIAM *(on motion for reconsideration)*. While we deny rehearing on the merits, the defendant's motion for reconsideration and the state's response raise a point, relating to the limiting of the future availability of the writ of *habeas corpus*, that we deem merits clarification.

Therefore, in order to eliminate any possible confusion, the following addition is made to our language on page —.

"However, that statute [sec. 974.06] has not substantially replaced the writ of *habeas corpus* because sec. 292.01(1), Stats., allows a 'person restrained of his liberty' to prose-

cute a writ of *habeas corpus* to obtain relief from confinement subject to the provisions of sec. 974.06, Stats. Thus, it is clear that the remedies provided in sec. 974.06, Stats., and the writ of *habeas corpus* are limited solely to those persons confined under sentence of a state court or otherwise confined or restrained of one's liberty."

The language added to our opinion is underscored in the above paragraph.

The rehearing is denied without costs.