ZINGLER, Plaintiff in error, vs. THE STATE, Defendant in error.

*May 5—June 1, 1911.*

*Criminal law: Homicide: Degrees: Perverted impulse: Malice: Mental responsibility.*

In determining whether defendant might properly be convicted of murder in the second degree, where there was no defense of insanity, his acts cannot be treated as the product of an irresistible or perverted impulse resulting from mental disease, but he must be considered as a responsible human being and held accountable for the necessary and ordinary consequences of his acts.

ERROR to review a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge.   *Affirmed.*

The plaintiff in error was convicted of the crime of murder in the second degree on an information charging that on the 24th day of February, 1910, he did wilfully, feloniously, and of his malice aforethought kill and murder one Mary Nitsche, with a premeditated design then and there to effect the death of said Mary Nitsche.

Mary Nitsche, a widow sixty-seven years old, lived about a block from the defendant, who was a widower fifty-two years of age. They were friends. About half past 7 o'clock on the evening of her death they were seen talking together on the street near the home of the defendant. Shortly afterward the defendant got a pail of beer from a saloon near by. About half past 9 o'clock he again came to the saloon inquiring for a doctor and also for the son of Mrs. Nitsche. He sought the son at a factory several blocks away, went to his home again, and then returned to the saloon and again inquired for the son and a doctor. When the doctor arrived, the defendant, the doctor, and several others went to the defendant's home and found Mrs. Nitsche lying dead on the floor of the defendant's bedroom. Several pillows were under her head and there was a pool of blood between her legs and on the floor. The defendant testified that the bleeding resulted from his having sexual intercourse with the deceased.

Upon an autopsy of the deceased it was found that there was a ragged cut or tear one and three-fourths inches long and about one and one-half inches deep on the right side of the vagina and back of the neck of the womb. This cut or tear was torn through the mucous membrane and had penetrated the tissues beyond inside the pelvis, rupturing and mangling the arteries situated there. The testimony of the physicians was that the deceased had bled to death and that the tearing which had ruptured and mangled the arteries must have been caused by the violent introduction into the vagina of the deceased of some hard foreign object, and that it could not have been caused by sexual intercourse alone as was claimed and stated by the defendant.

Physicians testified that if it were assumed that the injury to and death of the deceased had been caused by the defendant by the infliction of a wound resulting from the use of a hard and blunt article as above described, this would indicate that the act was impelled by a condition of sexual perversion in the perpetrator and that it implied that he sustained no malice or animosity toward the victim.

The court instructed the jury that there was no evidence on which they could find the defendant guilty of murder in the first degree, but he instructed them on and submitted the case to them upon murder in the second and third degrees and upon manslaughter in the first and fourth degrees.

The jury found the defendant guilty of murder in the second degree and he was sentenced to the state prison for the term of eighteen years. The defendant seeks a review of the proceedings of the circuit court.

The cause was submitted for the plaintiff in error on the brief of *Brown, Pradt & Genrich,* and for the defendant in error on that of *F. P. Regner,* district attorney, and the *Attorney General.*

SIEBECKER, J. It is averred by the plaintiff in error that the court erroneously submitted the case to the jury and permitted them to find him guilty of murder in the second degree, upon the ground that there was no evidence in the case to sustain such a verdict. The argument is made that, if it be found that the homicide was caused in the way heretofore stated, it conclusively appears from the opinion evidence in the case that the act which caused the death was committed through an impulse wholly devoid of any malice or animosity toward the deceased and hence cannot constitute murder in the second degree as defined in our statutes. There was no defense of insanity interposed in the action, and the defendant must therefore be treated as a responsible human being and held to accountability for the necessary and ordinary consequences of his acts as established by the evidence in the case.

His conduct material to the issues involved cannot, therefore, be treated as the product of an irresistible impulse resulting from mental disease, which overthrew the reason and judgment, extinguished the power to distinguish between right and wrong, and classed him as an insane person. The evidence respecting defendant's relation to the homicide must therefore be considered as referring to a person responsible for his acts.

The reason assigned upon which the evidence is claimed to be insufficient to sustain a conviction of murder in the second degree is that the opinion evidence is indisputably to the effect that the act which produced death, though dangerous to another and evincing a depraved mind regardless of human life, was not accompanied by the elements of malice and animosity required to be shown to constitute murder in the second degree. This contention goes upon the theory that the defendant was not to be held responsible for the necessary and ordinary consequences of his act because he is said to have been impelled thereto by a perverted moral impulse. This is, in one of its phases, a claim, in substance and effect, that he was insane and irresponsible, which defense, as heretofore stated, was not made, litigated, or considered upon the trial of the case.

Treating the evidence in the case as applying to a responsible person, it is manifest that the jury were justified in concluding that the act which produced Mrs. Nitsche's death constituted murder in the second degree. It is obvious from the very nature of the act that it was dangerous to another and unmistakably evinced a depraved mind regardless of human life. This evidence may well have led the court to conclude that the defendant in perpetrating the act had not formed the premeditated design of effecting Mrs. Nitsche's death, which design characterizes the crime of murder in the first degree. But the facts and circumstances were such that the perpetrator of the act may well be held to have known

that in its necessary and ordinary consequences it was dangerous to the life of another, and hence it furnishes the foundation for the legal inference of such constructive intent as is implied in the law from such conduct under the statute defining murder in the second degree, as construed in *Hogan v. State,* 36 Wis. 226, and *Cupps v. State,* 120 Wis. 504, 97 N. W. 210, 98 N. W. 546, and cases there cited.

We find no reversible error in the refusal to instruct as requested and in the instructions submitted by the court.

*By the Court.*—Judgment affirmed.