STATE of Wisconsin, Plaintiff-Respondent,

v.

Kenneth SPEARS, Defendant-Appellant.†

Court of Appeals

*No. 88-0401-CR. Submitted on briefs August 30, 1988.—*
*Decided November 3, 1988.*

(Also reported in 433 N.W.2d 595.)

† Petition to review denied. BABLITCH, J., took no part.

430

431

For the defendant-appellant the cause was submitted on the briefs of *Michael Yovovich,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *David J. Becker,* assistant attorney general.

Before Dykman, Eich and Sundby, JJ.

EICH, J. Kenneth Spears appeals from a judgment convicting him of two counts of second-degree murder (causing death by "conduct imminently dangerous to another and evincing a depraved mind, regardless of human life") in violation of sec. 940.02(1), Stats. Spears was convicted on his plea of no contest to the charges. He argues on appeal that there was an inadequate factual basis to support the plea, and also that the trial court abused its discretion in sentencing him to two consecutive sixteen-year prison terms. We reject both arguments and affirm the judgment and order.

Spears was charged after he struck and killed two pedestrians while driving through a parking lot in downtown La Crosse at a high rate of speed. According to his trial counsel, because the facts surrounding the deaths would support both the state's "theory" of second-degree murder, and his own "theory" that he should have been charged with the lesser offense of homicide by reckless conduct, Spears decided to enter an *"Alford"* plea to the murder charges. Such a plea, first recognized in *North Carolina v. Alford,* 400 U.S. 25 (1970), and later in Wisconsin in *State v. Johnson,* 105 Wis. 2d 657, 314 N.W.2d 897 (Ct. App. 1981), allows a guilty (or no contest) plea to be entered by a defendant "even when accompanied by protestations of innocence." *Id.* at 661, 314 N.W.2d at 899. In that event, the plea is said to constitute only a waiver of trial and not an admission of guilt. *Id.*

Under the plea agreement, Spears would plead no contest to the two second-degree murder charges and the state would be free to argue for whatever sentence it deemed appropriate, up to the maximum prison term of forty years—twenty (consecutive) for each count. After a lengthy colloquy with Spears, and after hearing the prosecutor's factual representations and the testimony of several witnesses, the trial court accepted the plea. The court proceeded to sentence Spears to two consecutive sixteen-year prison terms, and this appeal followed. Other facts will be referred to below.

## I. THE PLEA

Whether to permit a defendant to withdraw an accepted plea of guilty or no contest is discretionary with the trial court, and we will not upset the court's ruling unless an abuse of discretion is shown. *Hatcher v. State,* 83 Wis. 2d 559, 564–65, 266 N.W.2d 320, 323 (1978). The question on appeal is not whether the plea should have been accepted in the first place, but rather "whether there was an abuse of discretion in the trial court's denial of the motion to withdraw." *White v. State,* 85 Wis. 2d 485, 491, 271 N.W.2d 97, 100 (1978). And the defendant has the burden of showing, by clear and convincing evidence, that "the withdrawal of the plea is necessary to correct a manifest injustice." *Johnson,* 105 Wis. 2d at 666, 314 N.W.2d at 902, quoting *State v. Schill,* 93 Wis. 2d 361, 383, 286 N.W.2d 836, 847 (1980).

When a defendant enters an *Alford* plea, maintaining his or her innocence of the charge while at the

same time pleading guilty or no contest to it, the procedure clashes with the long-held rule that a plea may not be accepted absent a determination that·"'the conduct which the defendant admits constitutes the offense charged ....'" *Ernst v. State,* 43 Wis. 2d 661, 673, 674, 170 N.W.2d 713, 718 719 (1969) (citation omitted). As a result, before such a plea may be accepted, the trial court must determine that "the evidence the state would offer at trial is strong proof of guilt." *Johnson,* 105 Wis. 2d at 663, 314 N.W.2d at 900.

The *Johnson* court's discussion sheds light on the meaning of the phrase "strong proof of guilt." First, it is not the equivalent of proof beyond a reasonable doubt. *Id.,* 105 Wis. 2d at 664, 314 N.W.2d at 901. Indeed, the court suggested that the trial court's conclusion in that case that there was a factual basis for the plea "was equivalent to a finding that the proof of guilt was strong." *Id.* Second, the *Johnson* court framed the inquiry as whether the record "indicates that a sufficient factual basis was established at the plea proceeding to substantially negate [the] defendant's claim of innocence." *Id.* at 664, 314 N.W.2d at 901.

"A factual basis for acceptance of a plea exists if an inculpatory inference can reasonably be drawn by a jury from the facts ... even if an exculpatory inference could also be drawn and defendant asserts the latter is the correct inference." *In re Guilty Plea Cases,* 235 N.W.2d 132, 145 (Mich. 1975), *cert. denied,* 429 U.S. 1108 (1977). Applying these principles, we are satisfied that the trial court did not abuse its discretion when it denied Spears's motion to withdraw his plea.

The elements of second-degree murder are: (a) causing death (b) by conduct imminently dangerous to another (c) that evinces a depraved mind regardless of human life. Sec. 940.02(1), Stats. Spears does not challenge the causal connection between his actions on the night in question and the victims' death. And while his brief suggests that his conduct that evening was not imminently dangerous to others,* he concentrates his argument on the third element, contending that the record in this case is inadequate as a matter of law to establish a factual basis for a finding that his conduct evinced a depraved mind regardless of human life, citing *Wagner v. State,* 76 Wis. 2d 30, 250 N.W.2d 331 (1977), and *Balistreri v. State,* 83 Wis. 2d 440, 265 N.W.2d 290 (1978). We are not persuaded.

The requirement that the defendant's conduct was of such a character to evince a "depraved mind regardless of human life" is met "when the conduct causing death demonstrates an utter lack of concern for the life and safety of another and for which conduct there is no justification or excuse." Wis J I— Criminal 1110 (1966). In *Wagner,* the defendant was involved in a "drag race" with another vehicle on a city street at 11:00 P.M. when he struck and killed a

---

*Conduct that is "imminently dangerous to another" within the meaning of sec. 940.02(1), Stats., is "conduct dangerous in and of itself ... conduct inherently and consciously dangerous to life and not such as might casually produce death by misadventure." Wis J I—Criminal 1110 (1966). Spears does not seriously dispute that, at 7:00 in the evening, after ingesting sufficient alcoholic beverages to secure a blood-alcohol level of .22 percent, and with a car full of passengers, he drove into a major mid-city intersection at speeds approaching seventy or eighty miles per hour. Whether or not, as he insists, he attempted to apply the brakes shortly before entering the intersection, we consider the record to contain "strong evidence" of conduct imminently dangerous to others.

pedestrian. He was charged with second-degree murder. There were only two eyewitnesses, both of whom testified that they saw the racing cars "suddenly swerve to the left approximately one-half of a traffic lane" immediately before striking the victim. *Id.*, 76 Wis. 2d at 33, 250 N.W.2d at 334. The court, noting that while the defendant's actions demonstrated a "conscious disregard for safety of another," nonetheless concluded that he could not be convicted of second-degree murder because his conduct did not evince a "depraved mind," which the court defined as "a state of mind '... devoid of regard for the life of another ....'" *Id.* at 46–47, 250 N.W.2d at 340, quoting *State v. Weso,* 60 Wis. 2d 404, 411, 210 N.W.2d 442, 445 (1973). The basis for the court's ruling was the undisputed fact that the defendant had swerved to avoid hitting the pedestrian: "his attempt to avoid striking the victim by swerving to the left indicates some regard for the life of the victim." *Wagner,* 76 Wis. 2d at 47, 250 N.W.2d at 340.

*Balistreri* involved a police chase through downtown Milwaukee. The defendant, who was being pursued by one police car, drove down a one-way street going the wrong way. He swerved to avoid an oncoming vehicle, forcing three pedestrians in a crosswalk to jump to the curb for their safety. Several minutes later, he struck another automobile at an intersection. There were no deaths or serious injuries, and the defendant was charged with endangering safety by conduct regardless of life, an offense also requiring proof of "conduct imminently dangerous to another and evincing a depraved mind, regardless of human life." Sec. 941.30, Stats. The evidence was undisputed that the defendant turned on his headlights and swerved to avoid the squad car on the one-

way street, and that he sounded his horn and braked in an attempt to avoid colliding with the other vehicle. In light of these facts, the court held that the "depraved mind regardless of life" element of the crime had not been established because "[t]hese actions show some regard for the life of others." *Id.,* 83 Wis. 2d at 457–58, 265 N.W.2d at 298, citing *Wagner.*

Spears contends that because the record in this case would support a "reasonable hypothesis" that, like the defendants in *Wagner* and *Balistreri,* he was aware of the pedestrians and attempted to take evasive action before striking them, he cannot, as a matter of law, be considered to have evinced a depraved mind regardless of life. In the alternative, he raises the undeniably inconsistent argument that the record also supports the equally reasonable "hypothesis" that his car was wholly out of control at the time he struck the pedestrians, thus making any evasive action impossible. He maintains that under either view, the factual basis for his plea was inadequate. We turn to the record.

Several witnesses testified at the plea hearing. Sandra Scott, a rear-seat passenger in Spears's car, stated that the incident began when, after they left a tavern, another passenger criticized the car's condition and Spears, attempting to show the passenger "what the car could do," put the accelerator to the floor as they were crossing a bridge approaching one of the major intersections in downtown La Crosse. Scott looked at the speedometer and saw that it was registering "about 80" and noted that as they approached the intersection at the foot of the bridge, "he still had [the accelerator] down." According to Scott, Spears attempted to brake the car as they approached other vehicles stopped in the intersection, but that he

struck two parked cars. She stated that he then "hit the gas again," passing through a parking lot. Scott testified that at that point, someone in the car yelled "lookout there is people" and from her position in the back seat she could see people "off to the right." She, too, "screamed to look out, not hit them," at which point, according to Scott, Spears "swerved the car to the left" and said, "I think I hit them." He then continued down an alley at a "high rate of speed," while the passengers were "screaming" for him to stop. By this time he was being pursued by the police, and, after temporarily eluding them, eventually stopped the car several blocks away.

Christopher Strand was a pedestrian standing near the parking lot in which the two victims were struck. He testified that he heard a crash in the intersection and then saw a car traveling at a speed estimated between seventy and eighty miles per hour become "airborne" and land in the parking lot about five feet away from the victims. According to Strand, the car struck the pedestrians "and *then* swerved off to the right to miss [a] fence ...." (Emphasis added.) The car then "sped up" and left the parking lot "at a high speed" with the police in pursuit.

The prosecutor advised the court that several other witnesses, if called to testify, would state that Spears's car pursued "a relatively straight course" after striking the cars. He also stated that a police officer would testify that Spears told the police after the incident that he was attempting to flee because he had drugs in the car and did not want to be apprehended. In addition, the prosecutor represented that other evidence would establish: (1) that there were no defects in Spears's car, and that it was in "sound operating condition" on the evening in question; (2)

439

that after the incident Spears was tested and found to have a blood alcohol level of .22 percent—more than double the legal standard for intoxication; and (3) that skid marks in the area would establish that Spears took "no actions [that were] clearly evasive."

Spears himself did not testify at the plea hearing. At its conclusion, however, his attorney conceded that the facts would support the state's second-degree murder theory (as well as his own reckless homicide theory) and, in response to the court's questions, Spears himself stated that, although, pursuant to his *Alford* plea, he was not admitting all of the elements of the crime of second-degree murder, he "conced[ed] that the state has sufficient proof available to satisfy those elements . . . ." The trial court accepted the plea, finding, among other things, that there was "strong evidence" of Spears's guilt, and that to the extent one could infer from the evidence that he may have exhibited some "evasive actions" before striking the pedestrians, that conduct "was based not on concern for human life but on concern for his . . . not being apprehended, thinking he had drugs in the car and that he . . . did not have concern for the safety of others at the time this was going on."

Spears offered additional evidence at the hearing on his postconviction motion to vacate the plea. The person who had sold the automobile to him several weeks before the incident testified that she had advised Spears of its defects, including a sticky accelerator. Stating repeatedly that he had little recollection of the events and that his memory was "not very trustworthy [sic]," Spears testified that, after reaching a speed of seventy to seventy-five miles per hour on the bridge, he took his foot off the accelerator and, when the car did not slow down as it came upon the

cars stopped at the intersection traffic light, he attempted to apply the brakes and swerved across the center line. He testified that he did not recall hitting the two parked cars, but that someone later told him that he had. He testified that, at the time he crossed the center line, he was "not very clear on [what was happening]. I think what happened was that I was trying to free the [accelerator] pedal, reaching down ...." According to Spears, he then saw "cars and people" but was "fighting for control" of the car and was being thrown around in the passenger compartment. He stated that he remembered seeing a fence in the parking lot, but did not see any people there, and, in general, "[c]ouldn't see what was going on ...." Spears testified that after he eventually came to a stop, he "didn't really know anything of what had happened," and that while he remembered being chased by a police car, he "didn't know why." He also denied telling Sandra Scott that he thought he had hit someone in the parking lot. Finally, he testified that there actually were no drugs in the car at the time, he just thought there were because he had had a "large quantity" of drugs in the car earlier that day.

Spears wants it both ways. He argues on one hand that his conduct cannot be considered "regardless of life" because, as Scott's testimony indicates, he was in sufficient control of the car to take evasive action (swerving to the left) once he became aware of pedestrians in the car's path. On the other hand, he argues that it was not possible for him to take any evasive action, or avoid hitting the people, because his car was "out of control," and he was never even aware of the pedestrians' presence. We see no merit in either position.

441

Taking the "evasion" argument first, this is not a case like *Wagner* or *Balistreri*. In *Wagner*, the *only* evidence was that, just before the impact, the defendant abruptly swerved his car in an obvious attempt to avoid the collision. *Balistreri*, too, involved a single, undisputed version of the facts—that the defendant turned on his lights, swerved, applied the brakes and sounded his horn prior to the collision and the near-collision. Here, the evidence was not only unclear on the point, it was contradictory. The only evidence that Spears attempted to swerve came from the rear-seat passenger, Sandra Scott, who stated that when she and others screamed that there were people in the car's path, Spears swerved to the left. This was not only contradicted by the testimony of the pedestrian witness, Christopher Strand, that the car swerved *after* striking the victims, but also by Spears's own testimony at the postconviction hearing that no one warned him of any pedestrians, and that he never saw them or knew that he had struck them. And, as we have noted, his testimony that the car was out of control also belies any conscious attempt on his part to avoid striking them. On this record, the trial court could well conclude that there was "strong evidence" of guilt.

We reach a similar conclusion with respect to Spears's argument that his testimony that the car was out of control negates any possible factual basis for his plea. There is, to be sure, evidence that the car was "fishtailing" after striking the other vehicles, and that at one point it was "airborne." But there is also evidence that Scott could and did see the pedestrians from her position in the rear seat, and that others in the car could see them as well. Scott testified directly

that she saw them, and she stated that she heard others in the car yell to Spears that there were people in the car's path. She also stated that Spears himself immediately acknowledged that he thought he had hit the pedestrians.

There was also testimony that the car accelerated after striking the parked automobiles and before striking the pedestrians. This evidence, coupled with Spears's acknowledged belief that he had a large quantity of drugs in the car and feared apprehension by the police, permits an inference that, after driving through the intersection at seventy to eighty miles per hour and striking the cars, flight, not avoidance of injury to pedestrians, was predominant in his mind. The trial court so concluded, and we cannot fault that ruling.

As we noted at the outset, the question on appeal is whether, considering the facts and appropriate law, the trial court abused its discretion in refusing to allow withdrawal of the plea. Generally, we will not upset a discretionary determination if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Prahl v. Brosamle,* 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). There is no contention that the court did not exercise its discretion in denying Spears's motion to withdraw the plea; its decision is well-explained and the record established that it was "the product of a rational mental process." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20 (1981). And we believe the decision is one a reasonable judge could reach.

We agree with Spears that, depending on whose testimony is believed, and which inferences are drawn from undisputed testimony, the evidence setting forth the factual basis for the plea could support either a second degree murder "theory" or an "endangering safety theory." The dissent agrees as well and adopts Spears's view of the facts as its own. But the court's task in assessing the factual basis for a plea is not to search for evidence of innocence, or evidence of the defendant's guilt under a lesser charge. It is to determine whether the state's evidence of the defendant's guilt of the charged crime is strong. *Johnson,* 105 Wis. 2d at 663, 314 N.W.2d at 900. Indeed, if we were to view the evidence liberally in favor of the defendant, withdrawal would be the rule.

The trial court heard the testimony in this case and ruled that it provided "strong evidence" of a factual basis for the second-degree murder plea. Our own review of the evidence, which we have discussed in detail above, has led us to conclude that the court was correct in so ruling.

Spears has not shown, by the required degree of proof, it would be "manifestly unjust" to hold him to his plea. There was evidence before the court indicating that Spears, with a blood-alcohol level indicating a significant degree of intoxication, drove his car through a major city intersection at speeds approaching eighty miles per hour at a time when it could be expected that the intersection would be occupied by both vehicular and pedestrian traffic. There was also evidence that, after crossing the center line and striking two parked cars, and possibly fearing apprehension because of a large amount of drugs he believed to be in his car, Spears accelerated, became

airborne and vaulted a curb, striking and killing two pedestrians standing in the lot—pedestrians who had been visible to even the backseat passengers in his car. Then, with police in pursuit, he sped away.

Spears has not challenged the voluntariness of the plea, or his understanding of the nature of the charge and the effect of his plea. He was satisfied with his agreement at the time he made it and at the time he entered the plea, and he was satisfied with it as the sentencing hearing began a month or so later. Now, having received a sentence he believes to be too long, he seeks to withdraw his assent to the agreement, contending—contrary to the position he took at the time the plea was entered—that the facts presented to the court do not support conviction. In *State v. Booth,* 142 Wis. 2d 232, 237, 418 N.W.2d 20, 22 (Ct. App. 1987), we noted that: "disappointment in the eventual punishment imposed is no ground for withdrawal of a guilty plea. A defendant may not delay his motion until he has the opportunity to test the weight of potential punishment." Even so, we have concluded that the record contains adequate evidence of the existence of "a sufficient factual basis ... to substantially negate [Spears's] claim of innocence." *Johnson,* 105 Wis. 2d at 664, 314 N.W.2d at 901. We see no abuse of discretion in the trial court's denial of Spears's motion to withdraw his plea to second-degree murder on grounds that there was no factual basis for its acceptance.

## II. THE SENTENCE

The trial court sentenced Spears to two consecutive sixteen-year terms in prison, and he challenges that sentence as improper and excessive.

Wisconsin law recognizes a "strong policy against interference with the discretion of the trial court in passing sentence." *State v. Macemon,* 113 Wis. 2d 662, 670, 335 N.W.2d 402, 407 (1983). Trial courts have "a great advantage in considering the relevant factors and the [defendant's] demeanor" and are granted wide discretion in sentencing. *State v. Harris,* 119 Wis. 2d 612, 622, 350 N.W.2d 633, 638 (1984). Indeed, they are presumed to have acted reasonably unless the defendant can show an unreasonable or unjustifiable basis for the sentence. *Id.* at 622–23, 350 N.W.2d at 638–39. While a court may abuse its discretion by placing too much weight on any one factor in the face of contravening considerations, or when the sentence is so excessive as to "shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances," *Ocanas v. State,* 70 Wis. 2d 179, 187, 185, 233 N.W.2d 457, 462, 461 (1975), the weight to be accorded to particular factors in sentencing is for the trial court, not the appellate court, to determine. *In re Felony Sentencing Guidelines,* 120 Wis. 2d 198, 202–03, 353 N.W.2d 793, 796 (1984). We may not substitute our preference for a sentence merely because, had we been in the trial court's position, we would have meted out a different sentence. *McCleary v. State,* 49 Wis. 2d 263, 281, 182 N.W.2d 512, 521 (1971).

In sentencing Spears, the trial court referred to the seriousness of the offense, resulting as it did in the death of two people, and Spears's "long history of criminal conduct," which the court characterized as "mostly all alcohol and drug related offenses," reflective of "[u]ndesirable behavior patterns." The court

446

went on to note the facts of the case, likening Spears's conduct to "fir[ing] a rifle east on Clinton Street until someone or something was hit or killed" and emphasizing the need to protect the public and deter others from engaging in similar conduct. The record thus establishes that the court exercised its discretion in passing sentence for it examined the facts and stated its reasons for the sentence imposed, "using a demonstrated rational process." *Loy v. Bunderson,* 107 Wis. 2d 400, 415, 320 N.W.2d 175, 184 (1982). And because the court reached a reasoned and reasonable conclusion, it was a proper exercise of discretion. *Hartung,* 102 Wis. 2d at 66, 306 N.W.2d at 20.

Spears argues generally that the sentence should be vacated because the trial court gave too much weight to the seriousness of the offense, while merely "gloss[ing] over" his remorse, and placed undue emphasis on his past record. He also suggests, without really arguing the point, that the sentence is excessive.

The facts of this case justify the trial court's emphasis on the seriousness of the offense. We have held that those facts provide a basis for Spears's conviction for second-degree murder, an offense for which, given the two counts involved, the legislature has set a maximum penalty of forty years in prison. The evidence of Spears's conduct, which we have described in detail above, lends credence to the trial court's concerns about the serious and extreme nature of the offense. As for Spears's criminal record, he was thirty-four years old at the time of the offense and in the preceding eleven years he had been convicted of six misdemeanors, ranging from disorderly conduct and drug-related offenses to reckless use of a weapon

and fourth-degree sexual assault. He also has been convicted of one felony (auto theft) and of drunk driving. It is a record the court could properly consider as significant in passing sentence.

Spears did profess considerable remorse over the results of his actions on the evening in question, and we acknowledge that one of the reasons he gave for agreeing to plead to the charges was that he did not wish to put the victims' families through a trial. The court considered Spears's feelings in this regard, but noted that, given Spears's willingness to pursue the course of conduct he did on the night in question, his remorse came "awful late." Given Spears's actions and his history of conducting himself in disregard of the interests and safety of others, we cannot say that the trial court abused its discretion in giving short shrift to Spears's after-the-fact expressions of regret for the consequences of his actions. Finally, the sentences, while admittedly lengthy, are well within the boundaries set by the legislature and we do not consider them to be so lengthy as to "shock the public [or the judicial] sentiment."

*By the Court.*—Judgment and order affirmed.

SUNDBY, J. (*dissenting*). Kenneth Spears is guilty of a heinous crime: causing the death of two persons, including a five-year-old girl, by the intoxicated and reckless operation of a motor vehicle. I would not hesitate to impose the maximum penalty the law allows for his offense. But in which offense-slot does his conduct fit? The state charged Spears with second-degree murder, sec. 940.02, Stats. Spears acknowledges he is guilty of reckless homicide, sec. 940.06. Because it is debatable whether Spear's conduct, heinous as it was, evinced a depraved mind, regardless

of human life, a necessary element of second-degree murder, I would allow Spears to withdraw his plea so that a jury may determine whether he is guilty of second-degree murder or reckless homicide.

The legislature defines crimes. *See State v. Baldwin,* 101 Wis. 2d 441, 447, 304 N.W.2d 742, 746 (1981). By definition, second-degree murder is an unintentional killing. *Turner v. State,* 64 Wis. 2d 45, 51, 218 N.W.2d 502, 505 (1974). The elements of second-degree murder are: "First, that the defendant's conduct was imminently dangerous to another; Second, that his conduct was of such a character that evinced a depraved mind, regardless of human life; Third, that there was a relation of cause and effect between the death of [the victim] and the defendant's conduct imminently dangerous to another and evincing a depraved mind, regardless of human life." Wis J I—Criminal 1110.

The elements of the offense of homicide by reckless conduct are: "First, that the defendant engaged in reckless conduct; Second, that the defendant caused the death of [the victim] by such conduct." Wis J I—Criminal 1160.

Section 940.06(2), Stats., defines reckless conduct as follows:

> Reckless conduct consists of an act which creates a situation of unreasonable risk and high probability of death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury. It is intended that this definition embraces all of the elements of what was heretofore known as gross negligence in the criminal law of Wisconsin.

Both second-degree murder and homicide by reckless conduct assume that the killing was not purposive. The essential difference between the two degrees of homicide is that recklessness is enough to convict a person of reckless homicide while it is not enough to convict a person of second-degree murder. *State v. Weso,* 60 Wis. 2d 404, 410–11, 210 N.W.2d 442, 445 (1973). But a high degree of negligence may be an element of second-degree murder. *Id.* A high degree of negligence is defined, in part, the same as reckless conduct. Section 940.08(2), Stats., defines high degree of negligence to include "an act which the person should realize creates a situation of unreasonable risk and high probability of death or great bodily harm to another." Thus, the same act may constitute homicide by negligent use of a vehicle, sec. 940.08, Stats., reckless homicide, sec. 940.06, or second-degree murder, sec. 940.02.

In deciding the offense-slot into which Spears's conduct fits it may be helpful to ask, as the court did in *State v. Hoyt,* 21 Wis. 2d 310, 317n, 124 N.W.2d 47, 60 (1963) (opinion withdrawn for other reasons): "Why does the legislature make a grading between homicides? Why not simply hold that one who kills another should be subject to an invariant punishment?"

The *Hoyt* court answered:

Legislative gradings of homicides recognize that society places different estimates on the moral reprehensibility of the defendant's conduct in each type of homicide, and that variations in the defendant's character justify variations in the sentence. Distinctions between degrees of homicide on the basis of the state of mind of the defendant permit the trier of fact to make moral evaluations of the defendant's character and within general

limits determine the proper punishment. ... The only rational basis of placing a defendant in one category or another is to make some moral evaluation of his act of homicide.

*Id.* at 317n–317-o, 124 N.W.2d at 60–61.

Society's judgment as to the "moral reprehensibility" of the defendant's conduct is reflected in the punishment which society imposes on the convicted defendant. Plainly, society considers second-degree murder to be more reprehensible than reckless homicide because it allows the courts to impose greater punishment for second-degree murder.

Whether a defendant's conduct is reckless homicide or second-degree murder is ultimately decided, as it should be, by the jury. Reckless homicide is a lesser included offense of second-degree murder. *State v. Wilson,* 145 Wis. 2d 143, 154, 426 N.W.2d 56, 60 (Ct. App. 1988), *pet. for review granted.* The jury is the instrument by which society completes the "moral evaluation" of the defendant's conduct begun by the legislature.[1]

Spears, however, will be denied the opportunity to have the jury make a moral evaluation of his conduct. He pled no contest to two counts of second-degree murder. He now seeks to withdraw his plea. "When a motion to withdraw a plea is made after sentencing, the defendant has the burden of showing by clear and convincing evidence that the withdrawal of the plea is necessary to correct a manifest injustice." *State v. Johnson,* 105 Wis. 2d 657, 666, 314 N.W.2d 897, 902 (Ct. App. 1981) (quoting *State v. Schill,* 93 Wis. 2d 361,

[1]The judge may, of course, determine that the evidence does not permit submission to the jury of a lesser include offense. *State v. Sarabia,* 118 Wis. 2d 655, 661, 348 N.W.2d 527, 531 (1984).

383, 286 N.W.2d 836, 847 (1980)). Manifest injustice arises as a matter of law if a factual basis does not exist to support Spears's plea. It is the duty of the trial court prior to accepting a plea of guilty or no contest to personally ascertain whether a factual basis exists to support the plea. *State v. Bangert,* 131 Wis. 2d 246, 261–62, 389 N.W.2d 12, 21 (1986). This requirement is satisfied if the judge determines that the state will offer strong proof of the defendant's guilt. *Johnson,* 105 Wis. 2d at 663, 314 N.W.2d at 900. When, however, the defendant moves to withdraw a plea and claims that the proof will only support a lesser included offense, the court should be reluctant to deny the defendant's motion if the evidence is fairly debatable, so that the appropriate societal instrument, the jury, may make the necessary moral evaluation of the defendant's conduct. This is especially so because, in deciding whether to submit the lesser included offense of reckless homicide, the trial court is required to view the evidence in the most favorable light it would reasonably admit from Spears's standpoint. *Sarabia,* 118 Wis. 2d at 663, 348 N.W.2d at 532.

In my judgment, Spears's conduct did not evince a depraved mind, regardless of human life. At least the state's witnesses and the additional evidence the prosecutor stated he would offer at trial do not provide strong proof that the depraved-mind element of the offense of second-degree murder would be satisfied. But this is not my greatest concern, or, even, a concern at all. My concern is that the jury, not the trial judge, should make the moral evaluation of Spears's conduct.

The state claims that we must review the trial court's denial of Spears's motion under the standard of review we apply in determining sufficiency of the

evidence to sustain a jury verdict; that we must view the evidence in the light most favorable to the prosecution. I disagree. We review the denial of a motion to withdraw a guilty or no contest plea for "manifest injustice." Under the manifest injustice standard, we review the evidence, in my opinion, not to determine whether it is sufficient to sustain a jury's verdict, but whether it is reasonably debatable whether justice has miscarried because the evidence does not provide strong proof of the defendant's guilt or because the jury might as well have found the defendant guilty of a lesser included offense.

Before considering the evidence however, it will be helpful to review how "conduct evincing a depraved mind, regardless of human life" has been defined.

"Conduct evincing a depraved mind regardless of human life" is an element of three statutory offenses: second-degree murder, sec. 940.02, Stats., injury by conduct regardless of life, sec. 940.23, and endangering safety by conduct regardless of life, sec. 941.30, Stats. The jury instruction as to the meaning of depraved mind, regardless of human life is the same as to each offense. The instruction is:

> "Depraved mind[,] regardless of human life" does not mean that the mind of the defendant must have been diseased or that he must have had a mental disorder generally described as insanity or feeblemindedness. The depravity of mind referred to ... exists when the conduct ... demonstrates an utter lack of concern for the life and safety of another and for which conduct there is no justification or excuse.

Wis J I—Criminal 1110.

Because "conduct evincing a depraved mind, regardless of human life" is an element of the three offenses described, we may refer to cases decided under each statute. In each case in which this element was established, the defendant's conduct demonstrated a constructive or implied intent to kill. *See Wagner v. State,* 76 Wis. 2d 30, 41–42, 250 N.W.2d 331, 338 (1977); *Seidler v. State,* 64 Wis. 2d 456, 464, 219 N.W.2d 320, 325 (1974), *reprinted in* 67 A.L.R.3d 890 (1974).

In all of the cases I have reviewed I have found that the defendant had some advertence of the possibility of death or great bodily harm directed toward a specific individual or groups of individuals. *E.g., State v. Wilson,* (battering a child); *State v. Pankow,* 144 Wis. 2d 23, 422 N.W.2d 913 (Ct. App. 1988) (asphyxiation of child caused by towel tied around her mouth); *State v. Davis,* 144 Wis. 2d 852, 425 N.W.2d 411 (1988) (shooting victim in course of robbery); *State v. Michels,* 141 Wis. 2d 81, 414 N.W.2d 311 (Ct. App. 1987) (striking victim's head with large piece of wood); *State v. Flakes,* 140 Wis. 2d 411, 410 N.W.2d 614 (Ct. App. 1987), appeal dismissed, 98 L. Ed. 2d. 855 (1988) (strangling victim with a soft ligature during a sexual act); *State v. Johnson,* 135 Wis. 2d 453, 400 N.W.2d 502 (Ct. App. 1986) (striking child with a blow equivalent to a fifty to sixty miles per hour head-on collision); *Sarabia* (firing gun into a bar where defendant knew people were present); *State v. Bernal,* 111 Wis. 2d 280, 330 N.W.2d 219 (Ct. App. 1983) (shooting at victim's legs); *State v. Kelley,* 107 Wis. 540, 319 N.W.2d 869 (1982) (firing three shots at waist level into closed door of a room in which defendant knew there were people); *State v. Zellmer,* 100 Wis. 2d 136, 301 N.W.2d 209 (1981) (strangulation of child); *State v. Klimas,* 94

Wis. 2d 288, 288 N.W.2d 157 (Ct. App. 1979), *cert. denied,* 449 U.S. 1016 (1980) (shooting wife while distraught); *Hagenkord v. State,* 100 Wis. 2d 452, 302 N.W.2d 421 (1981) (beating and raping); *State v. Stawicki,* 93 Wis. 2d 63, 286 N.W.2d 612 (Ct. App. 1979) (hitting victim over head with wine bottle); *Terrell v. State,* 92 Wis. 2d 470, 285 N.W.2d 601 (1979) (shooting another); *Kirby v. State,* 86 Wis. 2d 292, 272 N.W.2d 113 (Ct. App. 1978) (beating with curtain rods, an electric cord and belt over a period of five hours); *Virgil v. State,* 84 Wis. 2d 166, 267 N.W.2d 852 (1978) (beating and gagging eighty-two-year-old female robbery victim); *State v. Verhasselt,* 83 Wis. 2d 647, 266 N.W.2d 342 (1978) (firing rifle at moving vehicle); *State v. Manson,* 76 Wis. 2d 482, 251 N.W.2d 788 (1977) (stomping victim to death); *Turner v. State,* 76 Wis. 2d 1, 250 N.W.2d 706 (1977) (sodomy of nine-year-old girl); *State v. Kuta,* 68 Wis. 2d 641, 229 N.W.2d 580 (1975) (pointing cocked and loaded gun at close range at stomach of police officer); *Werner v. State,* 66 Wis. 2d 736, 226 N.W.2d 402 (1975) (knifing); *State v. Van Ark,* 62 Wis. 2d 155, 215 N.W.2d 41 (1974) (placing home made bomb in another's car); *State v. Dolan,* 44 Wis. 2d 68, 170 N.W.2d 822 (1969) (poking knife in another's stomach and threatening to kill him); *State v. Johnson,* 233 Wis. 668, 290 N.W. 159 (1940) (firing shots into porch, toward street where children played); *Zingler v. State,* 146 Wis. 531, 131 N.W. 837 (1911) (tearing of victim's vagina by violent introduction of hard object); *Hogan v. State,* 36 Wis. 226 (1874) (striking victim's face with sharp edge of ax).

Reprehensible conduct does not necessarily evince a depraved mind. In *Seidler,* the defendant threw a child into a bedroom in the direction of the bed. The child died from injuries sustained when she struck the

metal frame of the bed or the bedpost. The court held that the defendant's conduct did not evince the "constructive intent" to cause death, necessary to second-degree murder. *Seidler,* 64 Wis. 2d at 463, 219 N.W.2d at 324. Depraved mind, regardless of human life is something more than negligence but something less than specific intent. *Hagenkord,* 100 Wis. 2d at 484, 302 N.W.2d at 437. "[T]he 'depraved mind' element imports a state of mind which, although less than specific intent, is more criminally culpable than negligence because of its offensive and shocking nature. It is a heinous type of *mens rea ....*" *Id.* at 484–85, 302 N.W.2d at 437–38.

I have found five cases in which the state has alleged that the defendant's operation of a motor vehicle evinced a depraved mind. In *Montgomery v. State,* 178 Wis. 461, 190 N.W. 105 (1922), the defendant, while intoxicated, drove into people plainly visible to him, who were waiting to board a streetcar. The court affirmed his conviction of second-degree murder. In *Bednarski v. State,* 53 Wis. 2d 791, 193 N.W.2d 668 (1972), the defendant was driving at night on a Milwaukee Street at a speed of forty to fifty miles per hour. Pursued by police, he repeatedly turned his car toward a police motorcycle, finally striking and injuring the police officer. The court affirmed his conviction of endangering safety by conduct regardless of life.

In *Wagner,* the defendant was drag racing at a high rate of speed on a street in the middle of a city. He struck and killed a pedestrian. The court held that the evidence was insufficient to establish conduct evincing a depraved mind, regardless of human life. The court said: "The conduct may well be reckless or negligent and it may carry with it a high probability

of death or injury, but it is not conduct imminently dangerous to another or such conduct that carries with it the implied intent to kill as those criteria are interpreted in the second-degree murder statute." *Id.* at 44, 250 N.W.2d at 339.

In *Balistreri v. State,* 83 Wis. 2d 440, 265 N.W.2d 290 (1978), the court reversed the defendant's conviction of endangering safety by conduct regardless of life. He attempted to elude police by driving his car at speeds greater than sixty miles per hour in heavy traffic. The court held that such conduct was imminently dangerous to life, but did not evince a depraved mind regardless of human life because his conduct in turning on his lights, swerving to avoid a squad car, honking his horn and braking to avoid a collision showed some regard for the life of others. The court said:

> Conduct involving the operation of a motor vehicle that evinces depravity must be more than the negligent or reckless operation of a motor vehicle, though ... recklessness can be an element. ... [T]he conduct ... must be so inherently fraught with danger to the victim's life that to engage in it implies a constructive intent to maim or kill.

*Id.* at 458, 265 N.W.2d at 298 (citation omitted).

In *State v. Toliver,* 104 Wis. 2d 289, 311 N.W.2d 591 (1981), evidence that the defendant turned his vehicle and headed directly toward a police officer was held sufficient to sustain the defendant's conviction of endangering safety by conduct regardless of life.

For the operation of a motor vehicle to evince a depraved mind, regardless of human life it is not enough to show that the operator operated the vehicle in a way that created an unreasonable risk and high

457

probability of death or great bodily harm and demonstrated a conscious disregard for the safety of another. If such were enough, there would be no "grading" between reckless homicide and second-degree murder.

There are two factors which distinguish second-degree murder committed by operation of a motor vehicle and homicide by the reckless operation of a motor vehicle. First, the operation of the vehicle must imply a constructive intent to maim or kill. Second, the operation must be directed toward a specific victim or group of victims, the existence of whom the defendant was or should have been aware. *See Wagner,* 76 Wis. 2d at 42, 250 N.W.2d at 338. ("[T]here is a common fact present in many of the cases cited in *Seidler* and *Dolan;* that is that the conduct of the defendant was directed toward a specific victim or group of victims, the existence of whom the defendant was or should have been aware.").

In *Montgomery,* for example, the defendant saw people standing in his path and made no attempt to avoid hitting them. In *Bednarski,* the defendant deliberately struck a police officer's motorcycle. In *Toliver,* the defendant attempted to run down a police officer. In *Wagner,* however, there was no evidence that the defendant saw the pedestrian he killed. In *Balistreri,* the court said: "The state offered no evidence that, when the three pedestrians were forced to jump back on the sidewalk, the defendant saw them or was willing to hit them." 83 Wis. 2d at 458, 265 N.W.2d at 298.

With this background, I turn to consider the evidence presented at the plea hearing and the hearing on Spears's motion to withdraw his plea.

Spears, who was driving while intoxicated, and three passengers proceeded at speeds up to eighty

miles per hour in Spears's car on Clinton Street toward its intersection with Rose Street in the city of La Crosse. Cars were stopped at a red light at the intersection. Spears braked but was unable to stop. He pulled around the waiting cars and back into his lane of travel where he struck two cars. The operator of one of the vehicles stated that Spears struck his car and the car in front and "was all over the place and had really lost it."

After striking the two vehicles, Spears crossed Clinton Street at a diagonal, jumped the curb, passed between the Exchange State Bank building and a telephone pole, crossed an alley into a parking lot where he struck and killed two people.

Two impartial eyewitnesses testified. Chris Strand was standing at the telephone pole which Spears barely avoided as he crossed into the alley and parking lot. He testified that Spears was airborne across the alley, at a very high rate of speed—between seventy and eighty miles an hour—and landed in the parking lot five to six feet from the two victims. He testified that it did not appear that Spears had control of his vehicle. He expressed his opinion that Spears "probably" did not have any chance to avoid the victims.

The other eyewitness, Craig Loomis, was a motorist passing through the intersection of Clinton and Caledonia Streets, one block east of the intersection of Clinton and Rose. He saw Spears's car from the time it deviated from its lane of travel until it left the parking lot. He, too, testified that Spears's vehicle hit the curb, became airborne and landed in the parking lot. He thought that Spears's car was out of control when it swerved across Clinton Street.

The prosecutor represented to the court that other eyewitnesses would confirm that Spears's car "completely cleared the alley with the front end[, t]he front wheels coming down in the parking lot."

The undisputed evidence is that, because of his high rate of speed and lack of control of his car, Spears had no opportunity to avoid striking the victims. This evidence does not relieve his conduct of its character of moral reprehensibility but it does place that conduct within the legislature's "grading" of reckless homicide. His conduct consisted of "an act which creates a situation of unreasonable risk and high probability of death or great bodily harm to another and which demonstrates a conscious disregard for the safety of another and a willingness to take known chances of perpetrating an injury." Sec. 940.06(2), Stats.

Spears's conduct does not, however, demonstrate a constructive or implied intent to kill. At the least, Spears had the right, on the evidence, to have a jury decide whether his conduct constituted reckless homicide or second-degree murder. "The submission of lesser included offenses, where appropriate, it is right of both the accused and the State." *Walker v. State,* 92 Wis. 2d 690, 695, 286 N.W.2d 2, 5 (Ct. App. 1979), *aff'd,* 99 Wis. 2d 687, 299 N.W.2d 861 (1981) (footnote omitted).[2] I therefore respectfully dissent.

[2]The state argues judicial estoppel. This doctrine has no application to an *Alford* (*North Carolina v. Alford,* 400 U.S. 25 (1970)) plea. The function of an *Alford* plea is to allow a defendant to plead to a charge while maintaining his innocence. Spears has not taken inconsistent positions.