STATE of Wisconsin, Plaintiff-Respondent,

v.

James A. LOUKOTA, Defendant-Appellant.†

Court of Appeals

*No. 92–0815–CR. Submitted on briefs November 24, 1992.—Decided November 4, 1993.*

(Also reported in 508 N.W.2d 896.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Gretchen T. Vetzner* of *Reynolds, Herrick & Flesch* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas J. Balistreri*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J.   Defendant James Loukota appeals from a March 20, 1991 judgment convicting him of first-degree reckless endangerment as a repeater, in violation of secs. 941.30(1) and 939.62(1), Stats., and possession of a firearm as a felon and a repeater, in violation of secs. 941.29(2) and 939.62(1), Stats. He also appeals from a March 13, 1992 order denying his motion for postconviction relief. We affirm.

## THE ISSUES

Loukota presents the following issues:

(1)   Did exclusion from Loukota's jury array of twelve jurors who found a defendant not guilty in an unrelated case deny Loukota a jury constituting a fair cross section of the community? We conclude that Loukota failed to show that the exclusion of jurors from his jury array in violation of sec. 756.04, Stats., denied him a jury representing a fair cross section of the community.

(2)   Was the evidence sufficient to sustain Loukota's conviction for first-degree reckless endangerment? We conclude that it was.

(3)   Was the evidence sufficient to sustain the jury's finding that Loukota possessed a firearm in La Crosse County? We conclude that it was.

(4)   Did the trial court erroneously exercise its discretion when it instructed the jury that an item is in a person's possession if it is in an area over which the person has, and intends to exercise, control? We conclude that on the facts of this case, the court correctly instructed the jury.

## BACKGROUND

On June 27, 1990, Loukota escaped from Oakhill Correctional Institution. On July 24, 1990, Loukota

194

was involved in a high-speed vehicle chase with police officers, beginning in the City of La Crosse and ending in rural Trempealeau County. He ran four stoplights in the city and successfully negotiated several police roadblocks as he proceeded on State Trunk Highway 53 with police in pursuit. During the chase, Loukota straddled the centerline of the highway and swerved from side-to-side to prevent police vehicles from passing and stopping him.

Officer Thomas Sherwin testified that on a straight stretch of Highway 53, he attempted to overtake Loukota and pass him on the driver's side of the truck Loukota was driving. However, Loukota swerved into him and damaged the squad car Sherwin was operating. Sherwin was asked whether Loukota's contact with his squad car appeared to be accidental. He testified: "Accidental, no. I felt he was trying to ram me off the road."

Ultimately, Loukota's truck went off the road into a pasture. He ran from the vehicle, but at a point approximately 400 feet from the police officers he turned and faced them with his hands up, then turned his back, withdrew an object from his waistband, made an underhanded throw, and finally turned back to face the officers. A semi-automatic pistol was discovered approximately thirty feet from where Loukota surrendered.

Loukota was charged as a repeater for both first-degree reckless endangerment and possession of a firearm as a felon, contrary to secs. 941.30(1) and 939.62(1), Stats., and secs. 941.29(2) and 939.62(1), Stats. Loukota's jury was selected on February 5, 1991. On February 7, the day before trial, Loukota's counsel learned that jurors who had returned a "not guilty" verdict in another case had been excused from further

service. Counsel did not object to the jury array from which jurors were selected for Loukota's trial.

On November 18, 1991, Loukota filed a postconviction motion in which he contended that excusing the jurors from the jury array "tainted the jury selection process by depriving [Loukota] of a jury selected from a fair cross section of the population, and creating a prosecution-prone array in violation of sec. 756.04(2)(a) Wis. Stats." He argued that he was thereby denied his right to a jury trial guaranteed by WIS. CONST., art. I, sec. 5, and the sixth and fourteenth amendments to the United States Constitution.

The trial court denied Loukota's motion. It concluded that the jurors were erroneously excused from further jury duty. However, the court stated that: "The record in this case does not contain any evidence that Mr. Loukota was tried by any other than a fair and impartial jury."

## I.

## THE JURY ARRAY

The state concedes that jurors who had acquitted a defendant in an unrelated case were improperly excused from the array from which Loukota's jury panel was drawn. Loukota claims that this exclusion violated his constitutional right to be tried by a jury selected from a fair cross section of the community.

We conclude that *Lockhart v. McCree*, 476 U.S. 162 (1986), controls. McCree was prosecuted in an Arkansas state court for capital felony murder. At *voir dire*, the trial court removed for cause those prospective jurors who stated that they could not under any circumstances vote the death penalty. After he was

convicted and his conviction was affirmed, McCree filed a federal habeas corpus petition claiming that he had been denied his sixth and fourteenth amendment rights to have his guilt or innocence determined by an impartial jury selected from a representative cross section of the community. Although McCree succeeded in the lower courts, the United States Supreme Court rejected his claim. It held:

> McCree's "impartiality" argument apparently is based on the theory that, because all individual jurors are to some extent predisposed towards one result or another, a constitutionally impartial *jury* can be constructed only by "balancing" the various predispositions of the individual *jurors*. Thus, according to McCree, when the State "tips the scales" by excluding prospective jurors with a particular viewpoint, an impermissibly partial jury results. We have consistently rejected this view of jury impartiality, including as recently as last Term when we squarely held that an impartial *jury* consists of nothing more than "*jurors* who will conscientiously apply the law and find the facts." *Wainwright v. Witt*, 469 U.S. 412, 423 (1985) . . . . [Emphasis in original.]

*Lockhart*, 476 U.S. at 177-78. Loukota has not shown that the jury which tried him did not consist of jurors who conscientiously applied the law and found the facts. Under *Lockhart* he was not entitled to a jury predisposed to acquit him. His claim fails.

## II.

## RECKLESS ENDANGERMENT

■

Loukota argues that his conduct was not imminently dangerous and did not evince a depraved mind.[1] Conduct evincing a depraved mind remains an element of first-degree reckless endangerment. The introductory comment to the jury instructions under Wisconsin's homicide laws, revised in 1987 and effective January 1, 1989, states that "no change in meaning of the basic concept was intended" when the phrase "utter disregard for human life" replaced the phrase "depraved mind." Wisconsin J I—Criminal 1000, *Introductory Comment: Wisconsin's New Homicide Law*, at 8 (1989); Judicial Council Committee Note, 1987 S.B. 191. *See also State v. Holtz*, 173 Wis. 2d 515, 519 n.2, 496 N.W.2d 668, 670 n.2 (Ct. App. 1992).

■

Loukota compares his conduct favorably with the conduct of the defendant in *Balistreri v. State*, 83 Wis. 2d 440, 265 N.W.2d 290 (1978). In *Balistreri* the defendant led police on a chase through downtown Milwaukee. The defendant drove the wrong way on a one-way street, swerving to avoid oncoming traffic and forcing pedestrians in a crosswalk to run for safety, ran several red lights, and finally struck another automobile in an intersection. However, the evidence was undisputed that the defendant turned his headlights on, swerved to avoid traffic on the one-way street, and

---

[1] Section 941.30(1), Stats., provides: "Whoever recklessly endangers another's safety under circumstances which show an utter disregard for human life is guilty of a Class D felony."

sounded his horn and braked to avoid the collision. The court held that the depraved mind element was not met: "These actions show some regard for the life of others." *Id.* at 457-58, 265 N.W.2d at 298. The court said that "[c]onduct evincing a depraved mind must do more than create a situation of unreasonable risk of harm or death; it must be devoid of regard for the life of another." *Id.* The court found that the evidence was insufficient to support his conviction.

We conclude that Loukota's conduct more nearly resembles the conduct of the defendants in *Bednarski v. State*, 53 Wis. 2d 791, 193 N.W.2d 668 (1972), and *State v. Spears*, 147 Wis. 2d 429, 433 N.W.2d 595 (Ct. App. 1988). In *Bednarski*, on three occasions an officer on a motorcycle came alongside defendant's car in an effort to induce him to stop. Each time the defendant turned his car toward the motorcycle. On the last occasion, Bednarski struck the motorcycle, knocked it down and dragged it. The officer was injured. The court concluded that this evidence was sufficient to establish that defendant's conduct evinced a depraved mind regardless of human life. *Bednarski*, 53 Wis. 2d at 793-94, 193 N.W.2d at 669-70.

In *Spears*, the defendant, while under the influence, approached a major intersection in downtown La Crosse at a speed of approximately eighty miles per hour. He went through the intersection, struck two parked cars, became airborne and landed in a parking lot where he struck and killed two persons. We held that Spears' conduct satisfied the elements of second-degree murder in that he: "(a) caus[ed] death (b) by conduct imminently dangerous to another (c) that evinces a depraved mind regardless of human life." *Id.* at 436, 433 N.W.2d at 598.

Loukota argues that it was "the officer's own calculated risk-taking" that led to the collision of his vehicle with the vehicle operated by Officer Sherwin. He contends that Officer Sherwin should have exercised due care for his own safety. We reject Loukota's argument. Officer Sherwin had a duty to make every reasonable effort to apprehend Loukota, who was an escapee. The officer was entitled to believe that Loukota would give up his flight and obey the officer's obvious command to stop. We conclude that the evidence, viewed most favorably to the state and the conviction, is not so lacking in probative value and force that the jury, acting reasonably, could not have found guilt beyond a reasonable doubt. *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-58 (1990).

## III.

## POSSESSION OF A FIREARM

Loukota does not argue that the evidence was insufficient for the jury to find that he possessed a firearm in Trempealeau County. He contends, however, that the evidence was insufficient to convict him of possession of a firearm in La Crosse County. His argument is frivolous.

Loukota concedes that the evidence is sufficient to show that when he ran from his stalled truck he made an underhanded throw of an unloaded gun. He argues, however, that the state failed to introduce any evidence "about the origin or ownership" of the weapon.

Section 941.29(2), Stats., does not require ownership; the statute creates a possession offense. Because Loukota concedes that the evidence shows that he had

possession of the gun at the end of his flight, it is disingenuous for him to argue that the jury could not reasonably conclude that he possessed the gun during the sixty-five to ninety mile per hour chase through the streets of La Crosse. Loukota's argument required the jury to find that he abandoned his flight after he left La Crosse County long enough to stop in Trempealeau County to pick up the weapon, or that he discovered the weapon in the truck during the wild flight. In view of the hot pursuit by the police, the first circumstance was impossible, and the second is far-fetched. We reject Loukota's argument.

## IV.

## THE JURY INSTRUCTION

Loukota argues that the trial court erred when it added the following to Wis J I—Criminal 1343: "An item is in a person's possession if it is in an area over which the person has control and the person intends to exercise control over the item." He claims that this language "could have unduly influenced" the jury not to concentrate on the need for the state to establish Loukota's dominion and control.

We do not believe that Loukota intends to argue that the instruction incorrectly stated the law. We believe that Loukota intends to argue that the trial court erroneously exercised its discretion when it added the alternative definition of possession because the added language was "overly broad."

Loukota argues that "[v]arious plausible interpretations of the scant evidence were possible": the gun was in the possession of his passenger; the gun was not in the cab of the truck and under his control; and

Loukota did not know of the presence of the gun until he left La Crosse County.

In view of the fact that Loukota removed the gun from his waistband before he tossed it, these "plausible interpretations" become implausible. In any event, we do not see how the added language precluded the jury from drawing any of the inferences Loukota suggests. Certainly the added language permitted the jury to draw the inference it did, but that language has been approved where, as here, the evidence suggests that the defendant may not have had the weapon under his or her "actual physical control." *See In re R.B.*, 108 Wis. 2d 494, 496-98, 322 N.W.2d 502, 503-04 (Ct. App. 1982). *See also* Wis J I—Criminal 920, *Possession*, n.2. We conclude that the trial court correctly exercised its discretion when it instructed the jury as it did.

*By the Court.*—Judgment and order affirmed.