STATE of Wisconsin, Plaintiff-Respondent,†

v.

Crystal L. BIZZLE, Defendant-Appellant.††

Court of Appeals

*No. 97–2616–CR. Submitted on briefs August 24, 1998.—Decided September 23, 1998.*

(Also reported in 585 N.W.2d 899.)

†Petition to review denied.
††Petition to cross review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Charles Bennett Vetzner,* assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the briefs of *James E. Doyle,* attorney general and *Lara M. Herman,* assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. In this case, we reach the conclusion that the City of Racine Police Department Street Crimes Unit is not a crime prevention organization as contemplated by § 973.06(1)(f), STATS. Therefore, the sentencing court erred when it ordered Crystal L. Bizzle to make a contribution of $3091 to the Street Crimes Unit and we reverse that part of the judgment of conviction and remand to the sentencing court with directions. We affirm that portion of the judgment imposing an eight-year prison term because the court acted reasonably and had a basis in the record for the sentence imposed.

Upon her plea, Bizzle was convicted of being a party to the crime of possession of cocaine with intent to deliver in violation of §§ 939.05 and 161.41(1m)(cm)2, STATS., 1993–94.[1] The sentencing court imposed an indeterminate term of eight years and ordered Bizzle to make a contribution of $3091 to the Street Crimes Unit pursuant to § 973.06(1)(f), STATS. Bizzle filed a RULE 809.30(2)(h), STATS., motion for postconviction relief in which she asserts that the court improperly relied upon statements about her attitude and rehabilitative needs in imposing sentence and impermissibly ordered a contribution to the Street Crimes Unit. Bizzle appeals from the denial of her motion.

Bizzle claims that the trial court misused its sentencing discretion by premising her sentence on incorrect information and unwarranted assumptions. Specifically, she makes the assertion that nothing in the record supports the trial court's conclusions that she was in need of extensive rehabilitative treatment or its remark that her "attitude is awful."

This issue invokes the familiar proposition that sentencing is left to the discretion of the trial court, and appellate review is limited to determining whether there was an erroneous exercise of discretion. *See State v. Harris*, 119 Wis. 2d 612, 622, 350 N.W.2d 633, 638 (1984). There is a strong public policy against interference with the sentencing discretion of the trial court and there is a presumption that the trial court acted

---

[1] One count of possession of marijuana with intent to deliver in violation of § 161.41(1m)(h)1, STATS., 1993–94, and one count of maintaining a drug trafficking place in violation of § 161.42(1), STATS., 1993–94, were dismissed and read in at sentencing.

reasonably. *See id.* These guidelines, for appellate review of sentencing, share a common thread—they both pay substantial deference to the trial court's exercise of discretion. The deference we accord to the trial court's discretion comes from its superior position to observe the demeanor of the defendant, weigh the evidence available and consider the relevant factors. *See id.*

On numerous occasions the supreme court has stated that *an erroneous exercise of discretion might be found* for (1) failure to state on the record the relevant and material factors which influenced the court's decision; (2) reliance upon factors which are totally irrelevant or immaterial to the type of decision to be made; and (3) too much weight given to one factor on the face of other contravening considerations. *See Ocanas v. State*, 70 Wis. 2d 179, 187, 233 N.W.2d 457, 462 (1975).

Bizzle's challenge to the exercise of sentencing discretion attempts to place the burden on the trial court to justify, postconviction, the reasons for the sentence imposed. She complains that in denying her postconviction motion, the sentencing judge "failed to justify his reliance on defendant's attitude or her purported treatment needs." She concludes that this was a breach of the court's duty to explain the reasons supporting the eight-year prison term imposed.[2] This argument

---

[2] Bizzle asserts that the eight-year term imposed by the court was not supported by the record and "it could perhaps be argued that, regardless of rehabilitative needs, a six year term, as recommended by the prosecutor, was warranted." The recommendations of the prosecutor, defense counsel, victim and presentence investigation report author are nothing more than recommendations which a court is free to reject. "The sentenc-

disregards the presumption that the sentencing court acted reasonably. *See State v. Tarantino*, 157 Wis. 2d 199, 221, 458 N.W.2d 582, 591 (Ct. App. 1990). Her argument is nothing more than an effort to avoid the obligation to show an unreasonable or unjustifiable basis in the record for the court's exercise of discretion. *See State v. Macemon*, 113 Wis. 2d 662, 670, 335 N.W.2d 402, 407 (1983).

Bizzle's assertion of a misuse of discretion is limited to two remarks and ignores the balance of the record. Her narrow argument fails to deal with the sentencing judge's knowledge of the offense, the character and behavior pattern of the defendant and the need to protect the public. *See Elias v. State*, 93 Wis. 2d 278, 284–85, 286 N.W.2d 559, 561–62 (1980). She disregards the sifting and winnowing a judge does in deciding what sentencing factors are relevant and the weight that he or she will assign to those factors.

██

Bizzle argues that the sentencing court erred in concluding that she required extensive rehabilitation. As evidence in support of this argument, she points out that the only rehabilitation the Department of Corrections identified for her was educational. She asserts that she has completed an educational program and is now in unassigned status, which she represents to mean she is in need of no further rehabilitation. Her argument is disinguous. First, her successful completion of an educational program, after sentencing, is not evidence that the court acted unreasonably or was not justified in concluding that she required extensive

ing court always has an independent duty to look beyond the recommendations and to consider all relevant sentencing factors." *State v. Smith*, 207 Wis. 2d 258, 281, 558 N.W.2d 379, 389–90 (1997).

rehabilitation. A sentencing court is not required to look into the future; it is only required to consider the "facts that are of record or that are reasonably derived by inference from the record." *Ocanas*, 70 Wis. 2d at 187, 233 N.W.2d at 462.

Second, Bizzle overlooks the evidence available to the court at the time of sentencing. The author of the presentence investigation report documented Bizzle's criminal, social and psychological history. The author focused attention on Bizzle's three prior failures on probation. And, the author identified several rehabilitative programs Bizzle would benefit from, including anger management, alcohol and drug counseling, psychological counseling and educational services. We conclude that the sentencing court reasonably relied upon the facts and reasonable inferences that Bizzle needed rehabilitative services and was justified in considering her treatment needs when imposing sentence.

██

Bizzle sought to minimize her drug dealing by informing the court of two things. First, that her children were not aware that she dealt drugs because she never bought or sold drugs in her house or in their presence. Second, that she never sold drugs to her neighbors and, therefore, cannot be said to have disturbed her "community." These two statements are what led to the rebuke by the trial court that she had a "bad attitude." Bizzle complains that expressing mitigating circumstances during a sentencing allocution does not demonstrate a "bad attitude." While we agree that, generally, it is true that explaining mitigating circumstances is not, by itself, indicative of a bad attitude, what Bizzle said to the court could reasonably be labeled by a trial court to be so. Coupled with Bizzle's failure to express remorse or repentance, her state-

ment that she never dealt in front of her kids is contrary to the police statements that her kids were present when the dealings took place. The trial court could reasonably consider that her statement about her claiming to be a good mother does not square with the fact that she was still selling illegal drugs whether her children were present or not. As for her statement that she was not affecting her community because she did not deal to her neighbors, that statement ignores the fact that the community reaches far beyond her neighborhood; it includes the rest of the citizens of the City of Racine, the citizens of that county and, indeed, the people of this state. Her self-serving, narrow definition of what "harm to the public" means can also be reasonably considered by the trial court as indicative of a "bad attitude."

Our review of the record satisfies us that the trial court considered the proper factors during sentencing. *See State v. Jones,* 151 Wis. 2d 488, 495, 444 N.W.2d 760, 763 (Ct. App. 1989). We affirm the sentence imposed because the court appropriately exercised its discretion at the time of sentencing.

Bizzle's second challenge is to the sentencing court's order that she contribute $3091 to the Street Crimes Unit under § 973.06(1)(f), STATS. When Bizzle was arrested the police conducted a search of her residence on May 1, 1996, and found $3091 in the sleeves of a coat in her residence. At sentencing, the State represented that $3091 had been advanced to Bizzle when she began to work for the police after the May 1, 1996, search of her residence. Bizzle challenged the source of the money. She contended that the source of the money was a personal injury settlement she recently received.

The trial court ordered that the $3091 "be confiscated and turned over to the Metro Drug Unit for use in

drug interdiction." Subsequently, an amended order was signed by the court requiring that the cash be disbursed to the Street Crimes Unit, "whom the court finds to be a crime prevention organization pursuant to sec. 973.06(1)(f), Stats." In her postconviction motion, Bizzle argued that the court erred because the Street Crimes Unit is not a crime prevention organization and the court failed to consider her ability to pay. The court denied her motion for a return of the money.

On appeal, Bizzle limits her argument to the contention that the Racine Police Department Street Crimes Unit is not a crime prevention organization under § 973.06(1)(f), STATS. Whether the Racine Police Department is a crime prevention organization is a question of statutory interpretation which we review de novo. *See State v. Muniz*, 181 Wis. 2d 928, 931, 512 N.W.2d 252, 253 (Ct. App. 1994). The purpose of statutory construction is to give effect to legislative intent. *See id*. To determine that intent, we first examine the statutory language. *See id*.

The relevant statute, § 973.06(1)(f), STATS., provides in pertinent part:

> **(1)** Except as provided in s. 93.20, the costs taxable against the defendant shall consist of the following items and no others:
>
> (f) An amount determined by the court to make a reasonable contribution to a crime prevention organization, if the court determines that the person has the financial ability to make the contribution and the contribution is appropriate.

Bizzle asserts that "crime prevention organization" is ambiguous because it could be read to include a police department. She argues that common sense

prevents such a reading. She points out that although a police department has a crime prevention function, that does not make it a "crime prevention organization." Rather, it is a "law enforcement agency" as defined in §§ 165.77(1)(b) and (c), and 165.83(1)(b), STATS. She argues that "contributions" are normally made to voluntary or charitable organizations and not to a governmental agency.

The State counters that the phrase is capable of only one reasonable interpretation. The State resorts to a dictionary to argue that the word "organization" includes a governmental agency. It points out that if the legislature wanted to exclude police departments from the definition it would have provided for contributions to "charitable" or "nongovernmental" crime prevention organizations.

A statute or part of it is ambiguous if it is capable of being understood by a reasonably well-informed person in more than one way. *See State v. Richard Knutson, Inc.*, 196 Wis. 2d 86, 95, 537 N.W.2d 420, 423 (Ct. App. 1995). However, when a case comes before this court it is obvious that people disagree as to the meaning to be given to a statute. This is not controlling. The court must determine whether "well-informed persons" could have become confused. *See Recht-Goldin-Siegal Constr., Inc. v. Department of Revenue*, 64 Wis. 2d 303, 306, 219 N.W.2d 379, 380 (1974).

A word is not ambiguous merely because it is general enough to encompass more than one set of circumstances. *See Wilke v. First Fed. Sav. & Loan Ass'n*, 108 Wis. 2d 650, 654, 323 N.W.2d 179, 181 (Ct. App. 1982). However, in this case, "crime prevention organization" encompasses multiple sets of circum-

stances and leaves the reasonable person confused. Without a definition in the statute, a reasonable person could include organizations that are clearly dedicated to preventing crimes, such as "Crime Stoppers" or neighborhood watch groups. The same reasonable person could include groups that provide social services, such as literacy training organizations. Groups that target children and provide after-school activities, such as Boys and Girls Clubs, Boy and Girl Scouts, or YMCA and YWCA, could easily be included within "crime prevention organizations." Likewise, a reasonable person could include law enforcement agencies, from a local police department to the FBI, within the definition of a "crime prevention organization." Because the term "crime prevention organization" is so broad, it is left to the reader to determine what groups would qualify as a "crime prevention organization." Thus, we conclude that the term is ambiguous.

If the language of the statute is ambiguous, we examine the scope, history, context, subject matter and object of the statute in order to ascertain the intent of the legislature. *See Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 538, 345 N.W.2d 389, 394 (1984).

The bill drafting file does not support the State's argument that a police department is to be considered a "crime prevention organization." Section 973.06(1)(f), STATS., was created by 1987 WISCONSIN ACT 347, § 1, which originated in 1987 Assembly Bill 577. The first draft of the bill created a section that specifically authorized courts to order a defendant to make a "charitable contribution" as a condition of probation. The drafting file contains two letters. The first letter is from the La Crosse county district attorney who expressed concerns over the validity of requiring charitable

contributions. As an alternative, he suggested that the bill allow "as costs reimbursement either to Crime Stoppers specifically or, more generally, for reasonable rewards paid by the State or any third party for information resulting in the arrest and conviction of the defendant for any offense being considered at the time of sentencing."

The second letter is from the Manitowoc county sheriff who highlighted recent legislation in Illinois that authorizes a court to impose, as a condition of probation, the reimbursement of a crime prevention organization for reasonable expenses incurred in the offender's case. It was after both of these letters were received that amendments to the bill abandoned charitable contributions in favor of "a reasonable contribution to a crime prevention organization."[3]

The Illinois law, commended by the Manitowoc county sheriff, permits a sentencing court to impose as conditions of probation the requirement that a defendant reimburse a "local anti-crime program" for reasonable expenses and/or contribute a reasonable sum of money to such a program. *See* 730 ILL. COMP. STAT. ANN. 5/5–6–3.1(c)(12) and (13) (West 1998). The Illinois statute defines a "local anti-crime program" as "a plan established in various regions of this State which is designed to encourage the public to report incidences of crime to law enforcement agencies and to assist such agencies in the apprehension of criminal offenders." 20 ILL. COMP. STAT. ANN. 3910/7 (West 1998).

---

[3] Also included in the bill drafting file is an April 9, 1985 opinion from the Texas attorney general concluding that a sentencing court could order a defendant to reimburse a private Crime Stoppers program for reasonable costs incurred in the defendant's case.

Our examination of the drafting file for 1987 Assembly Bill 577 discloses no evidence that the legislature ever considered law enforcement agencies to be included within the definition of a "crime prevention organization." The material in the file satisfies us that the legislature's intent was to limit the definition of a "crime prevention organization" as was done in Illinois. We conclude that as used in § 973.06(1)(f), STATS., "crime prevention organization," is an organization within the State which is designed to encourage the public to report incidences of crime to law enforcement agencies and to assist such agencies in the apprehension of criminal offenders.[4]

A narrow definition of "crime prevention organization" that excludes law enforcement agencies is consistent with the policy that a defendant cannot be ordered to reimburse the internal operating expenses of law enforcement agencies. In *State v. Peterson*, 163 Wis. 2d 800, 801–02, 472 N.W.2d 571, 572 (Ct. App. 1991), we rejected a portion of a sentence that required the defendant to pay restitution to the arresting law enforcement agency for costs incurred in its investigation and arrest of the defendant.

---

[4] During the 1995–96 legislative session, no action was taken on 1995 Senate Bill 81 intended to amend § 973.06(1)(f), STATS., to permit courts to order defendants to make a contribution to "youth organizations," defined as a group providing services or activities to anyone under the age of eighteen years. This inaction leads to the conclusion that the legislature has rejected an opportunity to employ a broadening of the definition of a "crime prevention organization." *See Coffee-Rich, Inc. v. Department of Agric.*, 70 Wis. 2d 265, 273, 234 N.W.2d 270, 274 (1975).

In this case, however, the court assessed costs representing not specific disbursements made by the state in arresting and prosecuting Peterson but general reimbursement for routine law enforcement investigative activities. While law enforcement departments expend money in the investigation of criminal offenses and in discharging other responsibilities that our society assigns to law enforcement officers, the statute does not authorize imposition of these expenses on the defendant.

*Id.* at 804, 472 N.W.2d at 573. Citing *Peterson* with approval, the supreme court has held that routine operating expenses incurred by the State Crime Laboratory during the course of criminal investigations cannot be transformed into fees or disbursements. *See State v. Ferguson*, 202 Wis. 2d 233, 243, 549 N.W.2d 718, 723 (1996).

The narrow definition that we adopt today is also consistent with the limit on reimbursement of drug "buy money." In *State v. Evans*, 181 Wis. 2d 978, 984, 512 N.W.2d 259, 261 (Ct. App. 1994), we held that when a defendant is sentenced to prison there is no authority to order the reimbursement of drug "buy money" either as a cost or disbursement under § 973.06, STATS., or as restitution under § 973.20(1r), STATS.[5] *Evans* emphasized one exception. In *State v. Connelly*, 143 Wis. 2d 500, 421 N.W.2d 859 (Ct. App. 1988), we had held that when a defendant is placed on probation the reimbursement of drug "buy money" is a reasonable and appropriate condition of probation within the meaning of the applicable statute. *See*

[5] The statute discussed in this case is § 973.20(1), STATS., 1993–94. As of February 26, 1996, this statute was renumbered as § 973.20(1r).

*Evans*, 181 Wis. 2d at 982, 512 N.W.2d at 260. In *Evans*, we noted:

> The State has argued persuasively that the public's money received by a defendant in connection with an undercover drug purchase that results in his or her conviction should be subject to return when the defendant is sentenced. The legislature has not so provided, however, and it is not within our province to write or rewrite state statutes.

*Id.* at 984, 512 N.W.2d at 261.[6]

During the 1997–98 regular session of the Wisconsin Legislature, an attempt was made to overrule *Peterson*. 1997 Senate Bill 353 was introduced to amend § 973.06(1)(a), STATS., to provide that a court may order a defendant to pay the expenses incurred by a law enforcement agency and a district attorney that are attributable to the investigation, apprehension and detention of the defendant. The bill was not acted upon prior to the adjournment of the legislature. The effect of the legislature's refusal to overrule *Peterson* is to affirm our reasoning in that case. As the supreme court has stated in *Zimmerman v. Wisconsin Electric Power Co.*, 38 Wis. 2d 626, 634, 157 N.W.2d 648, 651 (1968), "when the legislature acquiesces or refuses to change the law, it has acknowledged that the courts' interpretation of legislative intent is correct."

---

[6] The legislature has not responded to *State v. Evans*, 181 Wis. 2d 978, 512 N.W.2d 259 (Ct. App. 1994). Legislative silence with regard to new court-made decisions indicates legislative acquiescence in those decisions. *See R.W.S. v. State*, 162 Wis. 2d 862, 880, 471 N.W.2d 16, 23 (1991).

To define "crime prevention organization" to include law enforcement agencies would lead to absurd results. By ordering a defendant to make a contribution to a "crime prevention organization," a court could order a defendant to repay internal operating expenses of a police department and routine operating expenses of the State Crime Laboratory or return drug "buy money" and circumvent judicial interpretation of the applicable statutes and subsequent legislative acquiescence to that interpretation. Because we are required to avoid statutory constructions which lead to an absurd or unreasonable result, *see State v. Mendoza*, 96 Wis. 2d 106, 115, 291 N.W.2d 478, 483 (1980), we reverse that portion of the judgment that orders Bizzle to make a contribution to the Racine Police Department Street Crimes Unit pursuant to § 973.06(1)(f), STATS.

We remand to the trial court with directions to vacate that portion of the judgment of conviction, as amended by the subsequent order, requiring the contribution of $3091 to the Racine Police Department Street Crimes Unit as a crime prevention organization pursuant to § 973.06(1), STATS. The trial court shall enter an order requiring the return of $3091 to Bizzle.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.