PER CURIAM.
¶ 1 Jerard Hampton appeals a judgment, entered upon his no-contest pleas, convicting him of delivering one gram or less of cocaine; possession with the intent to deliver ten to fifty grams of heroin; and possession of a firearm as a felon. Hampton also appeals the order denying his postconviction motions for plea withdrawal or, alternatively, "reconsideration of the sentence." Hampton argues that the State's failure to disclose "exculpatory evidence" warrants plea withdrawal. Hampton also claims the circuit court erroneously exercised its discretion by imposing an "abundantly excessive" sentence. We reject Hampton's arguments and affirm the judgment and the order.
BACKGROUND
¶ 2 During April and May of 2012, a City of Superior police investigator arranged for confidential informants to make four controlled buys of heroin and four controlled buys of cocaine from an individual they believed was "Michael Hampton." After one of the controlled buys, the suspect left in a vehicle registered to Casey Christiansen and proceeded to a home on Roosevelt Avenue in Superior. Following the eighth controlled buy, the suspect was arrested and identified as Michael Hawkins, who is Hampton's brother. On the same day as Hawkins' arrest, police arranged another controlled buy for $100 of crack cocaine using the same contact information from the earlier buys. The confidential informant purchased two baggies of cocaine-one weighing .3 grams and the other weighing .2 grams-from an individual the informant identified as Hampton.
¶ 3 A search warrant was then executed at the Roosevelt Avenue residence, and Hampton was arrested as he attempted to leave out the back door. Police found marked currency on Hampton that had been used for the controlled cocaine purchase earlier that day. Within the residence, police found heroin, cocaine, THC, prescription narcotics, and related drug paraphernalia, as well as a handgun. Christiansen, who lived at the residence and was present during the search, told police she knew crack cocaine was being sold and she knew Hampton had a gun, but she did not know about the heroin sales. During an interview with police, Hampton denied knowing there was heroin in the house.
¶ 4 The State charged Hampton with eight criminal counts, all as a repeater: (1) delivering one gram or less of cocaine; (2) possession with intent to deliver more than forty grams of cocaine; (3) possession with intent to deliver between ten and fifty grams of heroin; (4) possession with intent to deliver a prescription drug; (5) possession of tetrahydrocannabinols, as a second or subsequent offense; (6) possession of a firearm by a felon; (7) conspiracy to manufacture or deliver more than forty grams of cocaine; and (8) conspiracy to commit possession with intent to deliver between ten and fifty grams of heroin.
¶ 5 In June 2014, the parties entered into a plea agreement. In exchange for Hampton's no-contest pleas to delivering one gram or less of cocaine, possession with intent to deliver ten to fifty grams of heroin, and possession of a firearm by a felon, the State agreed to dismiss the remaining five counts, as well as the repeater enhancers. The State also agreed to join in defense counsel's recommendation for five years' initial confinement and five years' extended supervision on each count, to run concurrently. During the plea colloquy, the circuit court confirmed Hampton's understanding that the court was "not bound" by the joint recommendation or the presentence recommendation and that it "could sentence [Hampton] higher or lower or at the joint recommendation." The court explained it had the discretion to sentence Hampton to "anything ... up to the maximum penalties here." The court ultimately accepted Hampton's no-contest pleas and found him guilty of the three crimes.
¶ 6 Nearly two months after Hampton entered his no-contest pleas, and days after Hawkins received a sentence in excess of the recommendations made pursuant to his plea agreement, Hampton filed a presentence motion for plea withdrawal. Hampton claimed that he was innocent of the heroin and firearm counts and that he did not fully understand the consequences of his no-contest pleas. As evidence of his claimed innocence, Hampton cited the absence of his DNA on the handgun found during the search of Christiansen's house, as well as a recently discovered police report memorializing a January 2013 police interview in which Hawkins said that Hampton had nothing to do with the "process" of packaging the heroin for resale.
¶ 7 At a motion hearing, Hampton acknowledged that his plea withdrawal motion was motivated by not wanting "to get time for something that" he did not do and by his assumption, based on the sentence imposed in Hawkins' case, that his sentence might be "worse than the joint recommendation." The circuit court denied the motion, finding incredible Hampton's testimony regarding his innocence and concluding Hampton had not established a fair and just reason for plea withdrawal.
¶ 8 Out of a maximum possible forty-five year sentence, the circuit court imposed ten-year sentences on each count, consisting of five years' initial confinement and five years' extended supervision. The court ordered the sentences to run consecutively, rather than concurrently, as had been jointly recommended pursuant to the plea agreement. Hampton then filed postconviction motions for plea withdrawal and for reconsideration of the thirty-year sentence. The motions were denied after a hearing and this appeal follows.
DISCUSSION
I. Plea Withdrawal
¶ 9 Hampton argues he should be allowed to withdraw his pleas because the State failed to disclose exculpatory evidence, as required by Brady v. Maryland , 373 U.S. 83 (1963), and WIS. STAT. § 971.23(1)(h) (2015-16).[1] Decisions on plea withdrawal requests are discretionary and will not be overturned unless the circuit court erroneously exercised its discretion. State v. Spears , 147 Wis. 2d 429, 434, 433 N.W.2d 595 (Ct. App. 1988).
¶ 10 A plea withdrawal motion filed after sentencing should only be granted if it is necessary to correct a manifest injustice.[2] State v. Duychak , 133 Wis. 2d 307, 312, 395 N.W.2d 795 (Ct. App. 1986). Hampton has the burden of proving by clear and convincing evidence that a manifest injustice exists. See State v. Schill , 93 Wis. 2d 361, 383, 286 N.W.2d 836 (1980). One way to demonstrate a manifest injustice is to establish that the defendant "was deprived of a right guaranteed by the constitution, statute, or rule and that deprivation induced the defendant to plead guilty." State v. Harris , 2004 WI 64, ¶ 39, 272 Wis. 2d 80, 680 N.W.2d 737.
¶ 11 A defendant "has a constitutional right to material exculpatory evidence in the hands of the prosecutor." State v. DelReal , 225 Wis. 2d 565, 570, 593 N.W.2d 461 (Ct. App. 1999) ; see also Brady , 373 U.S. at 87 ("suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment").
¶ 12 To establish what is commonly known as a Brady violation, the evidence: (1) must be favorable to the accused as either exculpatory or impeaching; (2) must have been suppressed by the State, either willfully or inadvertently; and (3) must be material, in that prejudice ensued from its suppression. Harris , 272 Wis. 2d 80, ¶ 15. Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Id. , ¶ 14. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. However, the mere possibility that undisclosed information might have helped the defense does not establish materiality in the constitutional sense. Id. , ¶ 16.
¶ 13 Hampton claims he is entitled to withdraw his pleas because the State failed to disclose the police report of Hawkins' interview until after Hampton's pleas were entered. Consistent with his testimony at the postconviction motion hearing, Hampton alleges that had he known about the police report, he would not have agreed to accept the plea agreement with the heroin charge, even if that meant going to trial and facing additional penalty exposure. Although the State, in effect, conceded that the subject police report was not given to Hampton until after the plea hearing, it argues that Hawkins' statement was neither exculpatory nor material. We agree.
¶ 14 The subject police report states, in relevant part:
I asked [Hawkins] about the "bagging" process at the house. When law enforcement executed the warrant at [the Roosevelt Avenue residence], the heroin was lying on the counter. There were larger chunks of heroin and many, many smaller packaging [sic]. There was a digital scale present as well. Hawkins said he was in the process of packaging the heroin for re-sale. He told me Hampton had nothing to do with this process.
As the circuit court noted in denying Hampton's postconviction plea withdrawal motion, "context is key." Hawkins' statement, at best, suggests Hampton was not involved in the packaging process. Even if Hampton was not involved in the process of packaging the heroin for re-sale, it does not automatically follow that he did not commit the crime of possession with the intent to deliver the heroin. In fact, as the circuit court noted, Hawkins did not say Hampton "wasn't involved in the dealing of it" and did not say "he wasn't involved at the house where it was sold out of." He merely said Hampton "wasn't involved in the packaging process." This statement does not exculpate Hampton from the heroin charge.
¶ 15 Even if we were to assume the statement was somehow exculpatory, Hampton failed to establish that it was material. Hampton asserts that had he known about Hawkins' statement, he would not have entered a no-contest plea to the heroin charge. Citing Lee v. United States , 137 S. Ct. 1958 (2017), Hampton asserts that "even with minimal chances at trial, a defendant may reject a plea offer based on personal considerations that may appear irrational to an outside actor." In this case, Hampton claims his belief that he should only be convicted of the crimes he actually committed outweighed any benefit of the plea. In Lee , the defendant pleaded guilty to a drug charge after his attorney erroneously assured him he would not be deported as a result of his conviction. Id. at 1963. The Supreme Court rejected the Government's invitation to adopt a per se rule that a defendant with no viable defense cannot show prejudice from the denial of his or her right to trial. Id. at 1966. The Court acknowledged "common sense ... recognizes that there is more to consider than simply the likelihood of success at trial." Id. In Lee , deportation was the determinative issue in Lee's decision whether to accept the plea, and the record gave "no reason to doubt the paramount importance Lee placed on avoiding deportation." Id. at 1967-68. The Court ultimately concluded that "[i]n the unusual circumstances" of that case, Lee had "adequately demonstrated a reasonable probability that he would have rejected the plea had he known it would lead to mandatory deportation." Id. at 1967.
¶ 16 In the instant case, however, the circuit court found Hampton's motion testimony incredible. Specifically, the court determined it was not credible that "this little sentence in a report" would have prompted Hampton to reject a plea agreement that reduced his maximum possible sentence exposure from "over 100 years" to 45 years.[3] Based on the record and the circuit court's credibility determination, we conclude Hampton failed to demonstrate a reasonable probability that he would have rejected the plea agreement had he known of Hawkins' statement. Because the statement, in context, was neither exculpatory nor material, the State's failure to disclose it did not constitute a manifest injustice necessitating plea withdrawal.
¶ 17 Hampton alternatively contends he is entitled to plea withdrawal on statutory grounds. In Wisconsin, the prosecutor's duty to provide exculpatory evidence to the accused is codified in WIS. STAT. § 971.23(1)(h), which requires, "at a minimum, that the prosecutor disclose evidence that is favorable to the accused if nondisclosure of the evidence undermines confidence in the outcome of the judicial proceeding." Harris , 272 Wis. 2d 80, ¶ 27. Hampton asserts that Hawkins' statement was favorable because it bolstered and corroborated his version of events-i.e., that he was involved only in cocaine-related activities. Hampton further claims that by failing to disclose the statement, the State denied him the opportunity to further investigate and raise potential motions based on the statement. As discussed above, Hampton has failed to show that the statement was exculpatory evidence. Moreover, Hampton fails to explain what additional investigation disclosure would have been necessitated, as he must have been aware of the scope of his activities at the Roosevelt Avenue address. Because the State did not violate any statutory obligation to disclose such evidence, Hampton's argument for plea withdrawal on statutory grounds also fails.
II. Resentencing
¶ 18 Hampton claims he is entitled to resentencing because the sentence imposed is "abundantly excessive," and it constitutes an erroneous exercise of discretion under "these circumstances."[4] In determining whether a sentence is excessive or unduly harsh, the circuit court's decision will be upheld unless it is based on an erroneous exercise of discretion. State v. Scaccio , 2000 WI App 265, ¶ 17, 240 Wis. 2d 95, 622 N.W.2d 449. The sentence imposed should be the minimum amount of confinement that is consistent with three primary sentencing factors: (1) the gravity of the offense; (2) the character of the defendant; and (3) the need to protect the public. See State v. Gallion , 2004 WI 42, ¶¶ 23, 59-61, 270 Wis. 2d 535, 678 N.W.2d 197.
¶ 19 The weight to be given each of the primary factors is within the discretion of the sentencing court, and the sentence may be based on any or all of the three primary factors after all relevant factors have been considered. See State v. Wickstrom , 118 Wis. 2d 339, 355, 348 N.W.2d 183 (Ct. App. 1984). When imposing sentence, the court must "by reference to the relevant facts and factors, explain how the sentence's component parts promote the sentencing objectives." Gallion , 270 Wis. 2d 535, ¶ 46. Sentencing objectives "include, but are not limited to, the protection of the community, punishment of the defendant, rehabilitation of the defendant, and deterrence to others." Id. , ¶ 40.
¶ 20 "As long as the [circuit] court considered the proper factors and the sentence was within the statutory limitations, the sentence will not be reversed unless it is so excessive as to shock the public conscience." State v. Owen , 202 Wis. 2d 620, 645, 551 N.W.2d 50 (Ct. App. 1996). A sentence issued "well within the limits of the maximum sentence is not so disproportionate to the offense committed as to shock the public sentiment and violate the judgment of reasonable people." State v. Grindemann , 2002 WI App 106, ¶ 31, 255 Wis. 2d 632, 648 N.W.2d 507.
¶ 21 Relevant to this case, a circuit court is permitted wide discretion in determining whether to impose concurrent or consecutive sentences. State v. Davis , 2005 WI App 98, ¶ 27, 281 Wis. 2d 118, 698 N.W.2d 823. A circuit court "may craft an appropriate sentence by recognizing that concurrent sentences may unduly undermine appropriate sentencing goals by giving a defendant a pass for some of his or her crimes." State v. Douglas , 2013 WI App 52, ¶ 20, 347 Wis. 2d 407, 830 N.W.2d 126.
¶ 22 Here, Hampton "acknowledges and accepts that the sentence is within the statutory limits and does not amount to cruel and unusual punishment." He nevertheless argues the sentencing court erroneously exercised its discretion when it imposed three consecutive sentences, rather than following the joint recommendation of three concurrent ten-year terms. Specifically, Hampton asserts his total sentence is excessive given his cooperation in the investigation of an unsolved homicide case. Hampton contends that rather than crediting Hampton based on his assistance, the court merely paid "lip service to what Hampton did and the risks he accepted as part of providing that information." We are not persuaded.
¶ 23 "As long as the [circuit court] exercises discretion and sentences within the permissible range set by statute, the court need not explain why its sentence differs from any particular recommendation." State v. Johnson , 158 Wis. 2d 458, 469, 463 N.W.2d 352 (Ct. App. 1990) (internal quotations omitted), abrogated on other grounds by State v. Harbor , 2011 WI 28, ¶ 47 n.11, 333 Wis. 2d 53, 797 N.W.2d 828. At the sentencing hearing, the court nevertheless fully explained its reasoning behind both the sentences imposed and its departure from the joint recommendation.
¶ 24 The sentencing court considered the severity of the crimes, noting the potential for violence where drugs and guns are concerned. The court determined there was a need to protect the public, given Hampton's "high risk of recidivism" based on his "significant prior record." The court also noted that Hampton's "[v]ery significant prior criminal history" reflected that he was "a dangerous person." Although the court acknowledged Hampton's cooperation with police, it ultimately concluded the joint sentence recommendation did not "go far enough to protect the public." The court additionally considered the benefit Hampton received under the plea agreement by significantly reducing his overall penalty exposure. The court considered proper sentencing factors before imposing a sentence that, while consecutive, was less than the maximum penalty allowed. Because the court considered the proper factors when imposing sentence, we conclude that it properly exercised its sentencing discretion.
¶ 25 Hampton nonetheless contends that the circuit court erred at the postconviction motion hearing by relying on earned release programs as a justification for the sentence imposed. The record, however, belies Hampton's claim. After explaining why it believed it had imposed a fair and appropriate sentence, the court added: "[I]f I remember correctly, he did receive Challenge Incarceration and Earned Release program, there's the ability for Mr. Hampton to get the help he needs while in prison, but quite frankly, ... he's been an habitual criminal and he got what he deserved in this case[.]" Moreover, we are not concerned with whether the court adequately explained its sentencing rationale during postconviction proceedings but, rather, whether its rationale at the original sentencing hearing supports the sentence imposed. See State v. Bizzle , 222 Wis. 2d 100, 105-06, 585 N.W.2d 899 (Ct. App. 1998). Because the circuit court properly exercised its sentencing discretion when it considered relevant factors and imposed sentences authorized by law, the court properly denied Hampton's request for resentencing.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

On appeal, Hampton's plea withdrawal arguments arise only from his postconviction motion for plea withdrawal. We therefore conclude Hampton has abandoned any challenge to the denial of his presentence motion for plea withdrawal. See A.O. Smith Corp. v. Allstate Ins. Cos. , 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

Hampton's pre-plea exposure totaled almost 200 years.

Although Hampton contends the circuit court "abused" its discretion, the Wisconsin Supreme Court long ago changed the terminology used in reviewing a circuit court's discretionary act from "abuse of discretion" to "erroneous exercise of discretion." State v. Plymesser , 172 Wis. 2d 583, 585 n.1, 493 N.W.2d 367 (1992). The substance of the standard of review, however, has not changed. Id.